No. 35,859

A. S. KININMONTH, Administrator c. t. a. of the Estate of Sarah C. Pennington, Deceased (L. S. ROBERTS, Adm'r, c. t. a., d. b. n., substituted), *Appellee*, v. MARTHA J. CARSON and HENRY D. PENNINGTON, *Appellants*.

(137 P. 2d 173)

Opinion filed May 8, 1943.

*W. E. Broadie* and *C. H. Quier*, both of Winfield, argued the cause for the appellants.

*J. B. McKay*, of El Dorado, and *Harry O. Janicke*, of Winfield, argued the cause, and *Roy Wasson*, of Wichita, and *O. B. Scott*, of Winfield, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action by the administrator of an estate to quiet title to the real estate and to set aside certain conveyances of interests in it. Judgment was for the plaintiff. Defendants appeal.

The action arose out of the business affairs of Sarah Pennington and Amanda Pennington, two elderly spinsters, who spent their lives together on a farm in Cowley county. The petition alleged the appointment of the plaintiff as the administrator of the estate of Sarah C. Pennington; that during her lifetime she owned the real estate involved, in fee simple; that plaintiff was in actual possession of the real estate; that the defendant, Martha J. Carson, claimed some title to it by virtue of certain instruments; that the defendant, Henry D. Pennington, claims some title on account of certain instruments.

The petition then set out another group of defendants which were referred to as the heirs of one Anderson D. Pennington, who was a brother of Sarah. The petition then set out another group of defendants and alleged that they claimed title to the property by virtue of certain instruments and alleged that these defendants were the devisees and legatees or their successors in interest under the will of Amanda C. Pennington and the executors of this will. The petition then alleged that at all the times mentioned Sarah was an incompetent and insane person, and that the grantees in the deeds and conveyances knew or should have known of her insanity and incompetency, and that there was no consideration given for the purported conveyances, and that they were wholly void and of no force and effect as against the plaintiff and the beneficiaries under the will of Sarah C. Pennington, deceased, and that these deeds, conveyances and claims constituted a cloud upon the title to the real estate described. The petition then alleged that defendant, W. E. Broadie, claimed to have some right in the real estate by virtue of a warranty deed wherein Henry D. Pennington was grantor and Broadie was grantee; that Broadie was not an innocent purchaser and should have known at the time of receiving the purported deed that Henry D. Pennington held no title; that Sarah was an incompetent person and that the conveyances were void. The petition next alleged that O. W. Torrance claimed to have some interest in the property, the exact nature of which plaintiff did not know but that the claim constituted a cloud upon the title of this plaintiff. The petition asked that the defendants, W. E. Broadie, Martha J. Carson, Henry Pennington and O. W. Torrance be forever barred from having or claiming to have any interest in the real estate, and asked that the two groups of defendants, which were referred to in the petition as heirs at law of Anderson D. Pennington and the devisees under the will of

Amanda C. Pennington, be forever barred from claiming to have any interest arising out of the purported conveyances, and that the title of the plaintiff be quieted in the real estate and that he be adjudged to be the owner of the fee-simple title to it. The conveyances referred to in the petition were mineral assignments executed by Sarah C. Pennington on April 11, 1936, conveying to each of her brothers and sisters, Henry Pennington, Martha Carson, Anderson D. Pennington and Amanda C. Pennington one-fortieth of the minerals in and under her lands in Sumner and Cowley counties, and also deeds executed by Sarah C. Pennington September 16, 1936, conveying her land in Cowley county to the two brothers and two sisters named and another deed conveying her land in Sumner county to the same parties. The petition was later amended to show that the plaintiff, A. S. Kininmonth, was on March 15, 1938, appointed administrator of her estate and that on the 6th day of October, 1939, an after-discovered will was admitted to probate and he was appointed administrator, c. t. a., of Sarah's estate and by order of the probate court after due notice to all interested parties on May 6, 1938, was granted possession of the real estate involved in this action; that a copy of this order is attached to the petition. This order was signed by the probate judge on May 6, 1938. It directed the administrator to take possession of the real estate belonging to deceased, to lease the same, collect rents, keep in repair, pay taxes, hold the income not expended in taxes, repairs and insurance until the further order of the court. Rebecca Porter, who was one of the defendants, and O. W. Torrance disclaimed any interest in the subject matter of the action, and a qualified disclaimer was filed by W. E. Broadie. Myrel W. Green and Ada Beeman filed separate answers and cross petitions. In their answer they admitted all the statements contained in the petition and in their cross petition they adopted the allegations of the amended petition and alleged that they were each residuary legatees under the will of Amanda C. Pennington, which was admitted to probate May 3, 1939, and alleged that the real estate involved was the property of Amanda C. Pennington by virtue of the will of Sarah C. Pennington, which was admitted to probate October 6, 1939. They prayed judgment be rendered as prayed for in the petition.

To the amended petition defendants, Roy H. Wasson and Myrel W. Green, executors of the estate of Amanda C. Pennington, filed similar pleadings except that in their cross petition they alleged

that they were the executors of Amanda's estate and that they were interested in the real estate involved because Amanda was the principal beneficiary under Sarah's will, dated January 1, 1910; that Amanda died in April, 1939 and Sarah died March 4, 1938 and that Sarah's will was admitted to probate October 6, 1939. These parties prayed that judgment be rendered as prayed for in the petition.

Another group of defendants filed an amended answer and cross petition, in which they admitted the allegations of the petition to be true and adopted the same as their cross petition and stated that they were not in possession of the real estate except through the plaintiff, pursuant to the order of May 6, 1938, which has been referred to, and alleged that they were legatees and devisees under the will of Amanda and made the allegations already referred to; that the real estate was the property of Amanda by virtue of Sarah's will, and alleged also that these defendants were also the heirs at law of Anderson D. Pennington, deceased, one of the grantees in the instruments referred to in the petition and if the instruments were not set aside they will be the owners of the respective interests in the property conveyed by said instruments; that judgment be rendered as prayed for in the petition.

The defendants, Martha J. Carson and Henry D. Pennington, filed a demurrer upon the grounds that the plaintiff as administrator had no legal capacity to sue; that in the petition several causes of action were improperly joined; that the petition as amended did not state facts sufficient to constitute a cause of action in favor of plaintiff and against defendants.

To the amended answers and cross petitions of the several cross-petitioning defendants the defendants, Henry Pennington and Martha Carson, filed separate demurrers or motions to strike from the files, the grounds set out being that the court had no jurisdiction of the person of the defendant or the subject matter of the action; that the cross petitioners had no legal capacity to sue; that the cross petitioners were not parties in interest and had no interest in the subject matter of the action; that several causes of action were improperly joined and that the amended answers and cross petitions did not state facts sufficient to constitute a cause of action.

The several demurrers and motions to strike were overruled by the court, and on July 17, 1942, defendants, Henry Pennington and Martha Carson, filed replies to the amended answers and cross petitions and set out a general denial except that certain purported

wills of Sarah C. Pennington and Amanda C. Pennington were admitted to probate, as alleged, and alleging that Amanda had possession of the will of Sarah for more than one year after the latter's death and never offered it for probate and had no intention that it should ever be probated; that Sarah died March 4, 1938, and Amanda died April 23, 1939; that on September 13, 1939, an order was made setting for hearing the petition to probate Sarah's will on October 6, 1939; that notice was given pursuant to section 185 of the Probate Code of 1939; that no title to the property passed to Amanda under the will and her legatees had no title therein; that the cross petitioners claimed title to the real estate under the deeds set out in the petition to their father, Anderson Pennington, and others, and were estopped from setting aside deeds and conveyances or obtaining relief inconsistent with their interest as successors to Anderson Pennington, grantee; that the cross petitioners had no interest in the subject matter of the action; that the action was barred by the statute of limitations and that Henry Pennington and Martha Carson each owned an undivided one-fourth interest in the real estate and the mineral rights and the cross petitioners should be excluded and barred from all title or interest therein.

For answer to the plaintiff's petition Martha J. Carson and Henry D. Pennington filed a general denial and then alleged that the plaintiff had no interest in the subject matter of the action; was not in legal possession of it, was not the real party in interest and was without legal capacity or authority to maintain this action and that the court had no jurisdiction of the subject matter of the action.

The answer further admitted that Sarah C. Pennington at the time of making the conveyances alleged was the owner of the real estate described; that she died on March 4, 1938, as alleged, and that shortly thereafter plaintiff was appointed as administrator; that in May, 1938, the probate court made an order authorizing the administrator to manage and control the real estate, collect the rents for the benefit of the several owners thereof; that on the 6th day of October, 1939, a purported will of Sarah was admitted to probate and plaintiff was appointed administrator c. t. a.

The defendants admit that in 1936 Sarah executed certain conveyances of her real estate. These conveyances were made to Martha J. Carson, Henry D. Pennington, Amanda C. Pennington and Andy C. Pennington, these persons being her only surviving brothers and sisters and nearest of kin and that the answering defendants were now the only surviving brother and sister of Sarah.

The answer further alleged that the conveyances were voluntarily and understandingly made in accordance with the expressed desires of Sarah and that in the preparation of them she had the independent advice of competent counsel and that the conveyances were valid and binding.

This answer was later amended by alleging that the cause of action was barred by the statute of limitations, G. S. 1935, 60-306, and that Sarah's estate had been fully administered for more than two years, all debts and demands paid and the administrator had more than sufficient property to pay all claims, demands and costs of administration.

The amendment also set out a cross petition to the effect that Henry Pennington and Martha Carson were the owners of the legal title to an undivided one-half interest in the real estate and were entitled to immediate possession thereof; that plaintiff unlawfully kept them out of possession and collected the rents and profits and refused to account therefor and that said defendants have judgment for immediate possession of their interest in this real estate and they have judgment against plaintiff in the sum of $2,000.

The other defendants filed replies to the answer so as to make up the issues.

The court called a jury to act in an advisory capacity. Two questions were submitted to this jury, one as to whether Sarah was mentally competent on April 11, 1936, and the other as to whether she was mentally competent on September 16, 1936. Both were answered in the negative. The trial court made further findings on its own account. These findings were in effect that Sarah and Amanda Pennington were spinsters and had lived the greater part of their lives on a farm owned by Sarah. Amanda was the older of the two. They each had considerable property. On January 1, 1910, Sarah was the owner of the real estate involved in this action, some in Cowley county and some in Sumner county. On that date she executed a will in which she gave some nominal gifts to her other brothers and sisters and gave Amanda all the rest of her property. Amanda executed a will on the same date in which she gave substantially all of her property to Sarah. The two sisters had several other brothers and sisters but the only members of the family with whom we are concerned are Amanda and Sarah, a brother named Henry, a brother named Anderson and a sister

named Martha. On April 11, 1936, Sarah executed the mineral royalty assignments, which are in controversy in this action. She owned one-eighth royalty, which would be five-fortieths. In these assignments she gave Anderson, Amanda, Martha and Henry each a fortieth interest and retained one-fortieth for herself. Under date of September 16, 1936, Sarah executed the deeds in question in this action covering all her real estate, purporting to convey it to the four brothers and sisters, reserving a life estate in Sarah. On October 29, 1936, Sarah was adjudged by the probate court to be a distracted person and a guardian was appointed for her person and estate. On March 4, 1938, she died at the age of about seventy-eight. The district court found that her will was admitted to probate and the plaintiff was appointed and was then the administrator of her estate. The court found that at least ten years before her death Sarah had senile dementia and that this continued to grow worse. The court further found that at the time of the execution of the mineral assignments and deeds Sarah did not have sufficient mental capacity to understand what property she owned or what disposition of her money she desired to make or who were the natural objects of her bounty, and that the answers of the jury to the special questions were supported by the evidence and were approved and adopted by the court. The court concluded that the mineral assignments and the deeds were null and void and should be canceled and that the plaintiff was entitled to a judgment quieting the title to the real estate described in the petition.

The defendants, Martha and Henry, filed a motion to set aside and modify certain of the findings and a motion for a new trial. Both these motions were overruled and judgment was entered in accordance with the findings and conclusions of law. The defendants, Martha J. Carson and Henry D. Pennington, have appealed.

It will be noted that the controversy had its inception in the two wills of Sarah and Amanda of January 10, 1910. Ordinarily when Sarah died before Amanda, Amanda would have taken under Sarah's will as of that date. Our case is complicated somewhat by the fact that when the controversy with which we are dealing got under way Amanda had died, too, so that the devisees under Amanda's later will became interested in this action. Also, to add a little to the confusion, Anderson Pennington has died and his heirs have an interest in this action. The record is not entirely clear but the important thing in this action, is that if the conveyances which are

sought to be set aside are valid, then the surviving brother and sister, Martha J. Carson and Henry Pennington, will take the interest in Sarah's real estate of Sarah which was conveyed to them. On the other hand, if the conveyances are not valid and the judgment of the trial court is correct then this real estate and the interest sought to be conveyed will pass from Sarah through Amanda to various other parties, devisees in Amanda's will, mostly nieces and nephews.

When the issues were finally made up the administrator of Sarah's estate was interested in setting aside these two conveyances and Henry Pennington and Martha J. Carson were interested in making the conveyances good. It took quite a little writing to set out all the pleadings because so many parties were involved, but the question of fact which the court had to determine was whether Sarah had sufficient mental capacity when she made the assignments and conveyances. The legal question is whether the plaintiff in this case brought the action in the proper court and whether he had legal capacity to bring an action at all.

We shall first deal with the last question urged by appellants— that their motions to set aside and modify the findings of the trial court should have been allowed and that the general findings asked for should have been made.

The appellants challenge certain findings of the trial court and state that they are not supported by any evidence. They take the position in this court that we must not consider these challenged findings. Their position amounts to this, they say that the findings are not supported by any evidence and that the appellees have not furnished a counter abstract to sustain the findings. Appellants point to rule 5 of this court, and contend the challenged findings must be striken out. The findings challenged have to do with the mental capacity of Sarah. These defendants overlooked in this argument some matters that transpired in connection with the preparation of this case for presentation to this court. While the appeal was pending the plaintiff and certain of the defendants filed motions to dismiss the appeal for the reason that the appellants had not obtained a transcript of the evidence and no transcript had been filed with the clerk of the court. It was pointed out in these motions that there was a large amount of oral testimony and documentary evidence taken during the trial and that without a complete transcript it was impossible for appellees to prepare a counter

abstract. It was pointed out that the prepared abstract was not based on a transcript and was incomplete and this court cannot review trial errors unless a transcript of the evidence has been made and filed and that all of the alleged errors claimed by the appellants were trial errors with the exception of the order overruling the demurrers of the appellants to the petition and cross petitions.

We set these two motions to dismiss for hearing, at which time counsel for the parties appeared. An argument was made by counsel for appellants as to the expense of securing a transcript.

The final order of this court was made on March 5, 1943, that we would hear the appeal on its merits but that we would confine ourselves to an examination and consideration of the questions which could be decided without resorting to the transcript or undertaking a consideration of the evidence.

It was the duty of the appellant to have the transcript made, certified and filed. (See G. S. 1935, 60-3311.) In *Baker v. Readicker*, 84 Kan. 489, 115 Pac. 112, this court considered an appeal where the appellant had not ordered or filed any transcript of the evidence and with reference to section 574 of the code, which is G. S. 1935, 60-3311, said:

"Section 574 does not expressly require that a party taking an appeal from a court of record to this court shall procure a transcript of the stenographer's notes of the testimony to be certified and filed with the clerk of the court, but it seems to be the clear implication that the appellant should, at least, cause so much of the stenographer's notes of the evidence and proceedings to be transcribed, certified and filed as may be pertinent to his appeal; otherwise, as there is no other provision for making it, there can be no such record in existence, and an order from this court or any judge thereof to certify up a transcript of the evidence would be futile. In this case it appears from the agreed statement of facts and admissions on the argument that no transcript of the evidence and proceedings in the district court were filed with the clerk thereof, and that there is technically no record of such proceedings." (p. 491.)

In considering the same question, this court, in *Libbey v. Holloway*, 92 Kan. 163, 139 Pac. 1188, said:

"The appellant does not appear to have obtained any transcript of the stenographer's notes of the testimony and proceedings in this case, as authorized by section 574 of the civil code, nor has he served upon the appellee any abstract as required by section 576, and by Rule 9 of this court. It should be certified and signed as required by *Railway Co. v. Conlon*, 77 Kan. 324, 94 Pac. 148, and should refer to pages of the transcript or record where the statements may be verified. As the case of the appellant is presented, it is impossible for the court to ascertain the facts as to many of the statements in the brief."

To the same effect is the language in *McGuire v. Davis*, 95 Kan. 486, 148 Pac. 755, where we said:

"There is a serious difficulty in the way of determining this matter. Only a part of the evidence has been transcribed. The appellant was privileged to omit from her abstract any evidence regarded by her as not pertinent to the questions presented. But it was incumbent upon her to have all the oral testimony preserved in a transcript, in order to provide an authentic source to which the appellee might go for whatever additional evidence he wished to bring before the court in a counter abstract. (*Readicker v. Denning*, 86 Kan. 79, 119 Pac. 533.) We conclude, however, that the judgment can be upheld on the basis of the evidence already before us." (p. 491.)

Rule 5 of this court, upon which appellants rely, provides that where the appellant makes a statement in his abstract that no evidence was introduced tending to show a certain fact and where the adverse party desires to controvert this he shall abstract so much of the evidence as he relies upon to support his contention in this regard. This rule clearly refers to a case where the appellant has ordered, certified, and filed a transcript. Unless the appellant has done this there is no record to which the appellee can go to prepare his counter abstract so as to comply with Rule 5. Hence the rule does not avail the appellants in this case.

Shortly after the case was finally argued in this court appellants filed a motion, wherein they asked that if this court deems a transcript necessary for a full determination of the questions raised, to order this transcript and charge the cost to the estate of Sarah Pennington. This motion was filed a few days after the appeal was finally argued and submitted. The attention of counsel had been challenged to the fact that the scope of review would be limited unless a transcript was filed. We do not feel disposed at this time to cause a further delay in the final determination of this appeal by granting this motion. We hold, therefore, that the questions raised by the appellants which require an examination of the evidence in the trial court will not be considered.

This brings us to a consideration of the question raised by appellants to the effect that the district court did not have jurisdiction of the subject matter of the action because it is an action of which the probate court had exclusive original jurisdiction. This argument is based upon the provisions of G. S. 1939 Supp. 59-301, which is part of the new probate code, where the jurisdiction and general powers of probate courts are set out. Our attention is especially called to the provisions of that section as follows:

"The probate courts shall be courts of record, and, within their respective counties, shall have original jurisdiction:

"(3) To direct and control the official acts of executors and administrators, to settle their accounts, and to order the distribution of estates:

"(5) To determine the heirs, devisees, and legatees of decedents.

"(11) Such other jurisdiction as may be given them by statutes pertaining to particular subjects.

"(12) And they shall have and exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts."

We have again examined that statute and the authorities cited. Plaintiff has called to our attention another section of the probate code, being G. S. 1941 Supp. 59-1401. That section provides as follows:

"The executor or administrator shall have a right to the possession of all the property of the decedent, except the homestead and allowances to the surviving spouse and minor children. He shall pay the taxes and collect the rents and earnings thereon until the estate is settled or until delivered by order of the court to the heirs, devisees, and legatees. He shall keep in tenantable repair the buildings and fixtures under his control and may protect the same by insurance. He may by himself, or with the heirs or devisees, maintain an action for the possession of the real estate or to quiet title to the same."

It is conceded by all parties that the plaintiff in this action was appointed administrator of Sarah's estate and that the probate court made an order putting him in possession of all the real estate involved. Plaintiff was in possession under this order when this action was commenced. He found the security of his possession threatened by the claims of the two appellants. The same section of the statute which provided for his being put in possession gave him authority to maintain action to quiet title. The proper forum in which to try such an action was conceded to be the district court before the enactment of the present probate code. See *Corson v. Sorter*, 140 Kan. 694, 37 P. 2d 1020, and authorities cited. There is nothing in the new probate code to change this rule. The section cited and relied on by the appellants does not have this effect. That section confers upon probate courts such equity jurisdiction as shall be necessary to hear and determine any matter properly before it. The matters referred to with the exception of applications for writs of habeas corpus are all matters ancillary and incident to the settlement and distribution of estates. This is not such an action. It is one that must be determined before any steps may be taken toward a settlement or distribution.

This takes us to the argument of appellants that plaintiff had no legal capacity to maintain this action. In this connection appellants point out that plaintiff brought the action as administrator of Sarah's will. They then point out that Sarah died March 4, 1938, and her will was not admitted to probate until October 6, 1939. They refer to G. S. 1941 Supp. 59-617, which provides that no will shall be effective to pass any property unless an application is made for its probate within one year after the death of testator, also G. S. 1941 Supp. 59-618, which provides that one who withholds a will from probate for more than a year shall forfeit all rights under it. They argue that since this will was not offered for probate until more than a year had elapsed after Sarah's death her will was invalid and any action taken by plaintiff pursuant to the terms of an invalid will are of no effect.

This argument takes us to an examination of the record of an appeal involving these same parties that has been heretofore mentioned, *Pennington v. Green,* 152 Kan. 739, 107 P. 2d 760. That action was brought by Henry Pennington and Martha Carson and other heirs and devisees of Sarah and Amanda Pennington against two of the defendants in the present action, that is Myrel W. Green and Roy H. Wasson, executors under Amanda's will. The object of the action was to obtain an interpretation and construction of the rights of parties that are interested in this action under the two wills of Sarah and Amanda. The petition in that case contained, among other things, the following allegation with reference to Sarah's will:

"'That about the ............... day of June, 1939, said wills were filed in the office of the Probate Judge of Cowley county, Kansas, a petition was filed for the admission of the will of Sarah C. Pennington to probate, and the same was duly admitted to probate October 6, 1939, and A. S. Kininmonth was duly appointed Administrator c. t. a.'" (p. 743.)

A demurrer to the petition was sustained and on appeal to this court the judgment was affirmed and this court said:

"Later, and on October 6, 1939, the will of Sarah C. Pennington of January 1, 1910, was duly admitted to probate and A. S. Kininmonth was duly appointed and qualified as administrator c. t. a." (p. 741.)

It could very well be said that the plaintiffs would not be permitted to assume two such inconsistent positions. They should not be permitted to say in *Pennington v. Green,* supra, that Sarah's will was duly admitted to probate and then say in this appeal that it

was not duly admitted. See *Stark v. Meriweather*, 99 Kan. 650, 163 Pac. 152 and *Roseman v. Nienaber*, 101 Kan. 260, 166 Pac. 491.

There is another reason why this argument is not good. Sarah died March 4, 1938. Chapter 180 of the Laws of 1939, being the new probate code, went into effect July 1, 1939. The statute with reference to withholding wills at the time of the death of Sarah was G. S. 1935, 22-233. It provided as follows:

"No lands . . . shall pass to any devisee in a will who shall know of the existence thereof, and have the same in his power and control for the term of three years, unless within that time he shall cause the same to be offered for or admitted to probate; . . ."

By the time the will was admitted to probate and plaintiff was appointed administrator, G. S. 1941 Supp. 59-618 was in effect. That statute provided as follows:

"Any person who has possession of the will of a testator dying a resident of this state, or has knowledge of such will and access to it for the purpose of probate, and knowingly withholds it from the probate court having jurisdiction to probate it for more than one year after the death of the testator, shall be barred from all rights under the will, and shall be liable for all damages sustained by such beneficiaries who do not have such possession of the will and are without such knowledge thereof and such access thereto."

This section was section 54 of chapter 180 of the Laws of 1939. Section 53 of the same chapter is the section upon which appellants depend. On account of the condition of this record we cannot conclude as a matter of fact that this will was withheld from probate by any person whose duty it was to offer it. No such evidence is pointed out by appellants.

There was no provision prior to the enactment of chapter 180 of the Laws of 1939 similar to G. S. 1941 Supp. 59-617, by which a will was ineffectual to pass property if not offered for probate within a certain time. See *Chandler v. Richardson*, 65 Kan. 152, 69 Pac. 168, also, *Allen v. Allen*, 28 Kan. 18.

Sarah's will was filed on June 6, 1939. G. S. 1935, 22-208, provided as follows:

"If any real or personal estate shall be devised or bequeathed . . . the executors . . . or any persons interested therein may cause the same to be brought before the probate court. . . ."

G. S. 1935, 22-213, provided as follows:

"The court shall cause the witnesses to such will and such other witnesses as any person interested for or against having the same admitted to probate

may desire to come before such court, and said witnesses shall be examined in open court."

There was no duty on anybody to do anything except to bring the will before the court. In *Barrett v. McMannis,* 153 Kan. 420, 110 P. 2d 774, this court held that it was not necessary that the court make a specific order showing that it intended to follow the old procedure, and said:

"Even though the method followed be held irregular, the probate court had jurisdiction, and its judgment may not be collaterally attacked." (p. 424.)

Certainly the position taken by the appellants here constitutes a collateral attack upon this will and the order of the court appointing plaintiff as administrator. In *Rishel v. McPherson County,* 122 Kan. 741, this court said:

"The statute of wills was designed to prevent barratry and to give security to title derived by will. The statute provides for establishing a will by a proceeding in rem (*Pee v. Carlyle,* 120 Kan. 200, 202, 243 Pac. 296), which concludes the world with respect to validity of the will, unless some person claiming an interest appears within two years and contests it by civil action in the district court." (p. 751.)

Appellants in this case might have made the argument they have made here had they seen fit to contest the order admitting the will to probate but they did not see fit to do that in time. See *In re Estate of Pennington,* 154 Kan. 531, 119 P. 2d 488.

We hold, therefore, that the trial court was correct in holding that the plaintiff had authority to bring this action having been appointed administrator of Sarah's estate under her will.

The judgment of the trial court is affirmed.

HARVEY, J., concurs in the result.