No. 37,051

In re Estate of JOSEPH W. THOMPSON, Deceased (SAMUEL ERASTUS WALDORF, Executor, *Appellee,* v. SAMUEL ELVIN WALDORF and CLEORA B. JACOBS, *Appellants*).

(190 P. 2d 879)

Opinion filed March 6, 1948.

*Emmet A. Blaes,* of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Roetzel Jochems* and *Robert G. Braden,* all of Wichita, were with him on the brief for the appellants.

*Patrick J. Warnick,* of Wichita, argued the cause, and *Alan B. Phares,* of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action by an executor for specific performance of a written contract entered into between the decedent and appellants. Judgment was for the plaintiff. Defendants appeal from the judgment and from an order overruling their demurrer to the evidence.

Appellants' principal contentions are that since the contract involves questions of title to real and personal property, which must

be determined in order to administer the decedent's estate, the district court had no jurisdiction to entertain the action; that authority to bring the action was not within the powers conferred upon the special administrator in the order of appointment; that since the special administrator had no power to bring the action, the order of the district court substituting the executor as party plaintiff was invalid; that the contract is unenforceable, having essential elements upon which the parties had not agreed, and that it was terminated by the death of the other party.

Mrs. Joseph W. Thompson, a resident of Sedgwick county, died on April 2, 1946. On April 4, Thompson executed a deed to a residence property in Wichita and a bill of sale of certain personal property to Samuel Elvin Waldorf and Cleora B. Jacobs, son and daughter of Mrs. Thompson, deceased, by a former marriage. In the deed he reserved a life interest in the residence property.

On January 7, 1947, Thompson filed an action in the district court against these stepchildren to have the conveyance set aside on the ground of fraud. Six days later, on January 13, 1947, the parties entered into the written agreement in purported settlement of the litigation. Since the instant controversy turns largely around a particular provision of this agreement, it will suffice to summarize the remaining provisions. Under the agreement, Thompson was to execute a quitclaim deed to Waldorf and Jacobs to certain Missouri land and to some cemetery lots, and they in turn were to execute a bill of sale to him for the personal property which he had theretofore transferred to them. As to the residence property in Wichita, the contract provided:

"IT IS AGREED that said property is to be placed upon the market for immediate sale; upon the completion of the sale the funds realized therefrom, first deducting the expenses of the sale, are to be placed in the Escrow Department of the Fourth National Bank of Wichita, Kansas, together with all of the other instruments incorporated in this agreement and together with this agreement. Upon the completion of said sale and the deposit of said money, as aforesaid, the escrow agent, after first deducting the expense of the escrow and the charges incident to said service will place in the possession of the first party fifty percent (50%) of said moneys realized from said sale. The remaining fifty (50%) percent of said moneys realized from the sale of said described real property will be distributed and placed in the possession of second parties. Said disbursements, as herein agreed upon by the parties hereto, on the part of the escrow agent are to be made when said escrow agent receives written notification from all parties hereto that the terms of this agreement have been fully complied with, . . ."

The various deeds and the bill of sale were to be placed in escrow in a Wichita bank, "and to remain there until the terms of this agreement have been fully complied with." The contract then provided:

"IT IS FURTHER AGREED that upon the complete fulfillment of the terms of this agreement, *to the satisfaction of all parties hereto,* that the case now pending in the District Court, hereinbefore referred to will be dismissed, with prejudice, at the cost of the plaintiff." (Italics supplied.)

The various instruments were executed and placed in escrow as provided.

Less than one month after the contract was executed, and on February 8, 1947, Thompson died. Samuel Erastus Waldorf was appointed a special administrator by the probate court, his order of appointment reading as follows:

"It is further ordered that said special administrator take into his possession *all real and personal property, which constitutes assets of the estate* of the deceased, Joseph W. Thompson, and to collect rent therefrom and to conserve said properties and to generally manage the same and to sue and be sued in connection therewith for the possession of said property and for the conservation thereof." (Italics supplied.)

On February 26, 1947, the special administrator filed the instant action for specific performance of the contract. On April 1, 1947, Thompson's last will was admitted to probate, and Samuel Erastus Waldorf, theretofore named special administrator, was named executor and directed to:

". . . take into his possession *all real and personal property, causes of action and choses in action* which constitute assets of the said deceased, Joseph W. Thompson and which constitutes possible assets of said estate and to sue and be sued in connection with the acquisition and taking into his possession the assets and possible assets of said real estate and *more particularly to prosecute* to final conclusion *the case now on file in the District Court* of Sedgwick County, Kansas entitled *'Samuel Erastus Waldorf, Special Administrator of the Estate of Joseph W. Thompson, deceased, vs. Samuel Elvin Waldorf and Cleora B. Jacobs,* No. A-21726' . . ." (Italics supplied.)

On April 26, 1947, Samuel Erastus Waldorf, as executor, was substituted as plaintiff in the action which he had initiated as special administrator. This was done over objection of the defendants.

In his petition, the plaintiff set up the facts heretofore narrated, alleging that the deed of April 4, 1946, was executed while Thompson was in great pain and sorrow by reason of the death of his wife, and in a partial coma, and in such a mental condition that he was unable to comprehend what he was doing; and that his condition was fraudulently taken advantage of by the defendants in order to

secure execution of the deed; and for the bill of sale to the personal property which he owned; that at a later date, upon being informed of the nature of the instruments and for the first time realizing their extent, he requested the defendants to reconvey to him the real estate and the personal property, but that they refused to do so; that on January 7, he filed the action heretofore referred to, to have the deed declared void and to secure reconveyance of the real and personal property; that thereafter the defendants and Thompson entered into the written agreement "in settlement of said above-described lawsuit"; that during his lifetime, Thompson performed all the conditions of the agreement on his part and that the petitioner had fully performed the conditions of the agreement, but that the defendants refused to carry out the agreement. The prayer was for specific performance including the sale of the residence property, the distribution of the funds received from that sale and for the delivery of the personal property to the plaintiff, together with proper conveyances of title.

In their answer, the defendants first denied the jurisdiction of the district court to entertain the action, and specifically denied the authority of the plaintiff to bring the action. Defendants specifically denied that they were guilty of any fraud, or had overreached or taken any unfair advantage of Thompson, but on the contrary had at all times acted fairly and equitably in all their relationships with him. They specifically denied that the agreement had been either fully or partially performed, and asserted that nothing had been done pursuant to the agreement except the depositing of the instruments in escrow. They further alleged that the agreement was wholly executory and had become incapable of performance and that, by its very nature and the facts and circumstances, the agreement had come to an end. Further, that the agreement was without any consideration, except for the executory provisions, none of which was ever performed or completed by the parties.

The reply was in substance a general denial.

The evidence, received under stipulation, consisted in the main of the instruments and orders heretofore referred to. It was also stipulated that no sale of the residence property had been effected and no contract for sale had been entered into prior to the death of Thompson. Also, that the original suit filed by Thompson to have the conveyances to the stepchildren set aside on the grounds of fraud was still pending.

We first consider the question of jurisdiction. In support of their contention that the district court was without jurisdiction of the action, appellants call attention only to the recent case of *Houdashelt v. Sweet,* 163 Kan. 97, 180 P. 2d 604, and the cases therein cited. The appellee relies upon *Kininmonth v. Carson,* 156 Kan. 808, 137 P. 2d 173, and *Sheedy v. Willoughby,* 157 Kan. 508, 142 P. 2d 801, to support the view that the district court was the proper forum for the action.

Since the enactment of the probate code in 1939, this issue of jurisdiction as between the probate and the district court has been presented in numerous cases and in all probability will arise in other cases. This is not surprising. The new code made many and far-reaching changes. One of its primary purposes was to place in the probate court, except where specifically provided otherwise, exclusive original jurisdiction over all matters incident to the administration of decedents' estates, in order to promote the orderly and expeditious settlement and distribution of estates. The broad language at times used in some of the cases which apply this principle may be somewhat misleading when isolated and read without regard to context or to the facts of the case under consideration. In the judicial process of construing and applying such a comprehensive enactment perhaps the most that can be hoped for is that gradually a unified and understandable structure will emerge, with a minimum of inconsistency, en route, on the part of the bench, and a minimum of uncertainty on the part of the bar. With that thought in mind, we have here reëxamined the numerous cases dealing with the instant question of jurisdiction, beginning with the parent case of *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438.

The decided cases may be broadly classified into two classes:

*First class.* Those cases in which the plaintiff sought to get something out of the estate. These include not only demands of creditors, but of those asserting some special claim to all or a portion of the estate either as heirs or under a will or under alleged contract with the decedent. It may be that in discussing such "demands" the distinction has not always been clearly drawn between claims of creditors *against* the estate and claims of those seeking *a share in* the estate after creditors' demands are met. But whether one or the other, the petitioner seeks something *out of the assets* of the estate. And in either case, the demand is clearly incident to administration and must be determined before distribution of assets can properly be made.

*Second class.* Principally, those cases, naturally fewer in number, wherein an administrator or executor sought *to bring property* of some sort *into the assets* of the estate, or otherwise to *realize something of benefit to the estate.* Also one case brought by an heir where, under particular facts to be noted, jurisdiction was in the district court.

In cases of the first class, it has uniformly been held that the probate court has exclusive original jurisdiction. In the second class it has been held, without exception, we believe, that the action was properly brought in the district court. In summarizing the decided cases we have no intention of indulging in the precarious pastime of generalizing as to issues that may hereafter arise in particular cases. As to the first class of cases it may well be said, however, that the rule has been so frequently and firmly stated as to leave little room to doubt its applicability to any sort of a claim, whether absolute or contingent, whether denominated legal or equitable, which seeks to reach the assets of the estate and the determination of which is necessary before settlement and distribution. All such claims are subject to the nonclaim statute, G. S. 1947 Supp. 59-2239.

As to the second class of cases, the ground has not yet been so fully covered, and we shall not anticipate issues. But we think the disposition made of the cases decided rests upon a sound basis. The code now provides in G. S. 1947 Supp., 59-1401, that the executor or administrator shall have the right to the possession of all the property of the decedent, real as well as personal, with certain named exceptions, and may maintain an action for possession of the real estate or to quiet title to the same. Prior to the enactment of the code, such actions were brought in the district court and the code contains no specific provision changing that rule. Consequently, in the cases that have arisen, this court has found no reason to conclude that the legislature intended to change the forum, as was the case in various actions falling within the first class of cases heretofore referred to. Appellants suggest, however, that if action to enforce a contract of this sort had been brought by them, the proper forum, under our decisions, would have been the probate court, and they argue that there is no logical reason why jurisdiction of the probate court should depend upon the question of who is the moving party. The argument may seem plausible but it ignores, we think, some very material considerations. In the first place, if

appellants were bringing an action to enforce a contract made with the decedent it would mean that they were seeking to *secure property constituting part of an estate* being administered. But in the case before us the action is to *bring property into the estate*. It is the very opposite of a demand upon an estate. And of equal, if not of greater moment, is the fact that the code as construed requires that all demands upon the assets of the estate must be brought in the probate court while no such requirement is made as to actions by the personal representative of the estate to add to or to enhance the assets of the estate.

We turn now to a brief summary of the principal cases involving this issue of jurisdiction under the present code. Cases prior thereto would not be helpful here. Nor need we discuss cases of ordinary creditor demands, since they present no controversy as to forum. In the following cases designated "first class" for convenience, it was held that the probate court had exclusive original jurisdiction; in those designated "second class" it was held that action was properly brought in the district court.

*First class:* *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438. Action for specific performance of an oral contract by decedent to devise real and bequeath personal property in consideration of personal services.

*Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364. Action against an estate to enforce an oral contract of the decedent to convey or to devise land in return for services.

*Yeager v. Yeager,* 155 Kan. 734, 129 P. 2d 242. Action against an estate to impose a trust upon real estate allegedly resulting from an oral contract of the decedent. Held to have been in effect a contest of the will.

*Swisher v. Bouse,* 155 Kan. 797, 130 P. 2d 565. Plaintiff alleged that the decedent had agreed to give him by her will a life estate in certain property. Success of the action would have changed distribution of the property.

*Behee v. Beem,* 156 Kan. 115, 131 P. 2d 675. Action to enforce an oral contract made by decedent to leave all his property to the petitioner in consideration for services rendered.

*Egnatic v. Wollard,* 156 Kan. 843, 137 P. 2d 188. The plaintiff sought to establish a claim arising out of an oral contract against the estate of intestate decedent. The alleged contract related to services rendered by a boy in return for which decedent agreed to

treat him as an heir and to make arrangements by will, or otherwise, for his education.

*Shively v. Burr,* 157 Kan. 336, 139 P. 2d 401. A demand against the estate of a deceased wrongdoer on account of wrongful death, the estate of the alleged wrongdoer being then in administration.

*Burns v. Drake,* 157 Kan. 367, 139 P. 2d 386. Action against the administrator of a decedent's estate for specific performance of an alleged oral contract to convey certain real property "by deed or will."

*Gantz v. Bondurant,* 159 Kan. 389, 155 P. 2d 450. Action to establish *inter alia* a resulting trust in land held in the name of the decedent, based on an alleged oral agreement.

*In re Estate of Bourke,* 159 Kan. 553, 156 P. 2d 501. Plaintiff asserted an interest and ownership based upon a partnership relation in real and personal property standing in the name of decedent on the date of his death.

*Houdashelt v. Sweet,* 163 Kan. 97, 180 P. 2d 604. After a decedent's estate had been finally closed in probate court, certain heirs-at-law brought an action in district court to set aside a deed to real estate to another heir, executed by decedent about ten months prior to his death. The administrator's inventory had disclosed only personal property. At no time had the plaintiffs in the later action advised the administrator of a contention that the deed was invalid, or taken any action to have ownership determined before the administration was closed. In the opinion it was said:

"Manifestly appellants, with full notice of the pending administration, could not by-pass the court of exclusive original jurisdiction and, after the estate was closed, acquire title to the property of the decedent as heirs at law free from the just claims of creditors of the estate." (p. 101.)

*Jardon v. Price,* 163 Kan. 294, 181 P. 2d 469. Plaintiffs sought, *inter alia,* to establish in district court a claim upon certain notes which were part of the estate of a decedent who had died six or seven years prior thereto. Held that it was duty of claimants to have administrator appointed within one year after the decedent's death, if they desired to establish such a claim, and that the claim was one over which the probate court had exclusive original jurisdiction.

*In re Estate of Pratt,* 164 Kan. 512, 190 P. 2d 872, this day decided. Action to establish a claim arising out of an alleged "joint venture" or partnership with the deceased.

*Second class: Jernberg v. Evangelical Lutheran Home for the Aged,* 156 Kan. 167, 131 P. 2d 691. Action by administrator of a decedent's estate to set aside, on grounds of mental incapacity and fraud, a written contract and a deed executed by decedent.

*Sheedy v. Willoughby,* 157 Kan. 508, 142 P. 2d 801. Action by the executor of a decedent's estate to partition real estate in which the testatrix held an undivided interest. (On pp. 512 and 513 will be found comment with reference to statements made in prior decisions as to the exclusive original jurisdiction of probate courts.)

*Kininmonth v. Carson,* 156 Kan. 808, 137 P. 2d 173. Action by administrator of a decedent's estate to quiet title to real estate and to set aside certain conveyances of interest in it. In the opinion it was said that the action "is one that must be determined before any steps may be taken toward a settlement or distribution." (p. 818.)

*Bryson v. Phillips,* 164 Kan. 529, 190 P. 2d 876, this day decided. About ten years after his father's death, a son sought to partition real estate in which he had an undivided interest. The father had died intestate and no administration was had upon his estate. Plaintiff's ownership became established prior to enactment of the present probate code. No debts were ever established against the estate and any such had long since been barred. It is held, under the facts set out in the opinion, that the district court had original jurisdiction to determine descent and to direct partition. While this action, unlike the preceding ones, was not brought by the personal representative of an estate, it is at once distinguishable on the facts from those in which the probate court has exclusive original jurisdiction.

The instant case clearly falls within the second class. The executor here seeks to enforce a contract made in settlement of a controversy and to secure dismissal of litigation arising therefrom and thereby to bring into the estate certain personal property and a share in the funds accruing from sale of real estate. None of this property stood in the name of the decedent at the time of his death. The action was properly brought in the district court.

Appellants' next contention is that the order appointing the special administrator did not authorize him to bring the instant action. (See copy of order, *supra.*) They urge that the special administrator was only authorized to take into his possession property constituting assets of the estate, to collect rents therefrom, to conserve and manage the property, and "to sue and be sued in connection

therewith for the possession of said property" and that this action seeks to secure property not a part of the assets of the estate. They say that, as to the property herein involved, the administrator had only a chose in action and that he already had possession of that. We think this construction of the order draws the language entirely too fine. It clearly appears from the record that the purpose of the order was to authorize the administrator to institute the instant action. The only way he could enforce his chose in action was to bring an action. And when the executor was appointed and took the place of the special administrator he was specifically authorized to prosecute the instant action. (See copy of order naming the executor, *supra*.)

Appellants next contend that in any event the contract which the appellee here seeks to enforce is unenforceable on its face. They call special attention to the fact that, with reference to the sale of the residence property, no agreement is indicated about the amount that must be realized from such sale in order to be satisfactory to all of the parties. Further, that no agreement is indicated as to whether the sale was to be a private or a public sale, or in what manner it was to be conducted. From this they argue that there was no complete meeting of the minds as to this essential element of the contract and that therefore the contract is unenforceable. They call attention to the words of the contract to the effect that the escrow agent was to deliver the instruments *upon written notification from all parties* that the terms of the agreement have been fully complied with, and that the case pending in district court was to be dismissed only upon fulfillment of the terms of the agreement *"to the satisfaction of all parties thereto."*

While the intention of the parties as evidenced by the contract is, we think, perfectly clear, we would have some difficulty in saying that there was a complete agreement as to the sale of the residence property if we had only the provisions of the original contract. This deficiency was, however, substantially supplied by counsel in the opening statement for the appellants. In such opening statement it was said:

"Now the instruments were executed and were taken down to The Fourth National Bank and placed in escrow. That was done about the middle of January, I believe. The property *was listed with a real estate agent,* Lloyd Laws, *at an agreed price of Twelve Thousand Dollars* . . ." (Italics supplied.)

It is not denied that this statement related to the residence property which was to be sold, the funds derived therefrom to be divided between the parties. This statement by appellants that the property was listed with a real estate agent at an agreed price of $12,000, supplements the original contract and makes it, in our opinion, sufficiently definite in that regard.

Appellants' last contention is that the contract terminated upon the death of Thompson. That contention is based principally upon the proposition that in the original deed from Thompson to the appellants and which he was attempting to have set aside on the grounds of fraud, he reserved a life interest; that upon his death this life interest of course terminated and that therefore an essential part of the subject matter of the contract had ceased to exist. The point is not well taken. In the instant action the plaintiff is not seeking to set aside the original deed. He is not asserting any right based upon the decedent's life interest. He seeks performance of a contract under which the parties agreed to sell this property and divide the proceeds without regard to what interest each had in the property. The contract falls clearly within that class of contracts which survive the death of one of the parties.

Appellee urges that courts look with favor upon agreements made in compromise settlement of controversies, particularly so when the controversy is represented by pending litigation. We agree. But since determination of the issue here does not turn upon that question, we shall not burden this opinion with citations of authority.

Appellants do not appear in very good light in resisting performance of the existing contract. Thompson had filed an action in the district court alleging that the conveyances in question were made as a result of undue influence and fraud. In that situation the parties got together for the purpose of settling the controversy and terminating the litigation. Appellants do not deny the execution of the contract. The lips of Thompson are now sealed by death. No reason has been made to appear why the appellants should not be required to perform the contract.

While the trial court was correct in overruling defendant's demurrer to the evidence and in giving judgment for the plaintiff, it is obvious that the judgment requires modification. The order entered by the trial court provided in part:

"IT IS FURTHER ORDERED that this decree be executed forthwith and that in default thereof this judgment shall have the same effect as if the defendants

and each of them *had executed proper deeds of conveyance for said real property* and personal property described in said petition filed by the plaintiff herein." (Italics supplied.)

In case there is such a "default," how is the order to be made effective? The controversy centers in the disposition to be made, under the agreement, of the residence property. How could the judgment operate as a conveyance? Who would be the grantee? What would the sale price be? And, of course, conveyance of the real property to the decedent's estate would not be consonant with the settlement agreement. It must be assumed that the defendants will coöperate, in good faith, in the sale of the residence property. What action may properly be taken in case they fail to do so may well await the event. Further, the judgment should provide, in harmony with the agreement, as supplemented by the opening statement, that the residence property be sold, if a buyer can be found, at a price not less than $12,000. This is not to say that modification upon which the parties may agree, subject to approval of the court, may not be made.

The case is remanded with direction to modify the judgment in harmony with this opinion. As so modified, the judgment is affirmed.