ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a corporation, Appellant,

v.

Arzola Virginia PRESTON, as Administratrix of the Estate of Eugene H. Preston, deceased, Appellee.

No. 5780.

United States Court of Appeals Tenth Circuit.

Aug. 4, 1958.

W. E. Treadway and Edwin M. Wheeler, Topeka, Kan. (C. J. Putt and J. B. Reeves, Topeka, Kan., on the brief), for appellant.

David Prager and Jacob A. Dickinson, Topeka, Kan. (Sam A. Crow, William W. Dimmitt, Jr., Stanley Roose, and Milford M. Magee, Topeka, Kan., on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

BRATTON, Chief Judge.

This was an action under the Federal Employers' Liability Act, as amended, 45 U.S.C.A. § 51 et seq. Eugene H. Preston instituted the action against Atchison, Topeka and Santa Fe Railway Company to recover damages for personal injury. Plaintiff died during the pendency of the action; his wife was appointed administratrix of his estate; and she was substituted as party plaintiff. In an amended complaint, filed after the substitution of the administratrix as party plaintiff, it was alleged that from 1944 to 1953, the deceased was employed by the defendant in the classification of blacksmith as a spring maker; that he was required in the course of his work to remove steel springs from an extremely hot furnace and quench them in a large tank filled with quenching oil or cooling oil; that great quantities of smoke and fumes were emitted from the tank into the air; that the smoke and fumes contained droplets or vaporized particles of oil; that the smoke, fumes, and droplets of oil contaminated the air surrounding the tank; that as the result of breathing such contaminated air, the deceased developed chronic pneumonitis and fibrosis of his lungs; and that he became totally disabled and later died therefrom. The elements of negligence pleaded were failure to provide the deceased a reasonably safe place in which to work; failure to furnish him a respirator or other like device; failure to provide adequate safe ventilation; failure to provide a canopy or suction fans; and failure to warn of the danger. By answer, the defendant denied that the plaintiff was the duly appointed administratrix of the estate of the deceased; denied that the court had jurisdiction of the matter as a civil action arising under the Act, supra; denied that the deceased developed chronic pneumonitis and fibrosis of the lungs; and denied negligence. A verdict was returned for plaintiff; judgment was entered upon the verdict; and defendant appealed.

██ The first contention advanced for reversal of the judgment is that jurisdiction over the parties was lacking. The argument in support of the contention is that the pretended letters of administration issued to the surviving wife of the deceased were granted on the petition of an attorney, as a creditor of the estate of the deceased by reason of sums alleged to have been advanced by the attorney in the prosecution of this litigation; and that the pretended oath of the administratrix purports to have been subscribed and sworn to before a notary public in and for Shawnee County, Kansas, on February 20, 1957, whereas the administratrix was in Tucson, Arizona, during that month and did not remember signing any such document. In its order appointing the administratrix, the Probate Court of Shawnee

County found that the deceased was a resident of such county at the time of his death; that he left property in that county; that the individual presenting the petition was a creditor of the estate; that the appointment of an administrator was necessary to continue the prosecution of this litigation; and that the surviving wife was a resident of Shawnee County and was a suitable person to be appointed administratrix. The probate court was clothed with jurisdiction to appoint an administrator of the estate of the deceased. And the order of appointment was not open to collateral attack in this action. Kininmonth v. Carson, 156 Kan. 808, 137 P.2d 173; Christianson v. King County, 239 U.S. 356, 36 S.Ct. 114, 60 L.Ed. 327; Harrison v. Love, 6 Cir., 81 F.2d 115; Hurt v. Cotton States Fertilizer Co., 5 Cir., 159 F.2d 52, certiorari denied 331 U.S. 828, 67 S.Ct. 1351, 91 L.Ed. 1843; Latta v. Western Investment Co., 9 Cir., 173 F.2d 99, certiorari denied 337 U.S. 940, 69 S.Ct. 1516, 93 L.Ed. 1744; Morris v. Ratliff, Tex.Civ.App., 291 S.W.2d 418. Neither was the right of the administratrix to maintain this action open to challenge upon the collateral ground that she failed to take and subscribe to the oath as such administratrix or that the taking of the oath was attended with irregularities. Gallagher v. Holland, 20 Nev. 164, 18 P. 834; Beresford v. American Coal Co., 124 Iowa 34, 98 N.W. 902; Reed v. Harlan, Tex.Civ.App., 103 S.W. 2d 236; Smallwood v. Boyd, 314 Ky. 763, 237 S.W.2d 66.

█ The next ground of attack upon the judgment is that the court lacked jurisdiction of the subject matter of the litigation. The substance of the argument in support of the contention is that the Federal Employers' Liability Act concerns itself only with liability for injuries of traumatic origin, that is, harm done by violent, external, accidental force with suddenness generally unexpected by the recipient; and that it does not undertake to bring within its coverage liability for lipoid pneumonia and fibrosis of the lungs proximately resulting from the prolonged inhaling of contaminated air. An indistinguishably similar contention was advanced and rejected in Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282. There the plaintiff had been employed as a fireman on steam engines of the railway company. Damages were sought under the Act for an alleged permanently disabling disease disagnosed as silicosis caused by the continuous inhalation of silica dust blown or sucked into the cabs of the locomotives on which plaintiff had worked. The railway company urged the contention that the Act did not bring within its coverage an occupational disease of that kind. It was held that the coverage of the Act was not restricted to harm inflicted by external, violent, and accidental means. It was said that silicosis was as much an injury within the intent and meaning of the Act leading in time as certainly to permanent disability as scalding from the explosion of a boiler. Viewed in the light of that controlling case, there is no room for doubt that where standards of reasonable care are not exercised by the employer, the Act brings within its reach liability for disabling and fatal lipoid pneumonia and fibrosis of the lungs proximately resulting from the prolonged inhaling of contaminated air.

█ The further contention is that even though the Act, supra, brings within its ambit liability for injury arising out of occupational diseases, negligence on the part of the employer is an essential element of the right of recovery under the Act; that the defendant in the exercise of reasonable care did not have the requisite knowledge in advance that the inhaling of air arising from the tank containing the quenching oil could reasonably bring about the disability and death of the deceased; and that therefore the evidence failed to establish negligence. Assuming arguendo that the disability and death of the deceased was caused by lipoid pneumonia, it is urged that such disease was not an occupational disease of common knowledge, with binding effect upon the de-

fendant; and that in the circumstances the failure to take preventive measures did not constitute actionable negligence. But medical evidence was adduced and reference was made to medical publications which tended to show that for some time prior to the disability and death of the deceased, it was known that the inhaling of fumes and mists containing vaporized oil may bring about lipoid pneumonia. Accordingly, the continued inhaling of the smoke and fumes arising from the tank containing quenching oil presented an industrial hazard of which the defendant was required to have knowledge.

■ Error is predicated upon the action of the court in denying the motion to strike all of the testimony of a physician with respect to his opinion and diagnosis of the deceased prior to his death, based in whole or in part upon what the physician had read as purported case history. After testifying at length in the course of direct examination concerning his opinion and diagnosis respecting the nature and originating cause of the disability and death of the deceased, the witness was asked on cross examination whether his opinion of the physical condition of the deceased was based in whole or in part upon what he had read and called case history. In response to the question, the witness stated that his opinion was bound to have been based in part upon the case history. To sustain the contention that the testimony should have been stricken, strong reliance is placed upon Murphy v. Edgar Zinc Co., 128 Kan. 524, 278 P. 764; Van Pelt v. Richards Paint & Paper Co., 136 Kan. 212, 14 P.2d 632; Cain v. Steely, 173 Kan. 866, 252 P.2d 909. It was held in general language in those cases that a physician while testifying as an expert will not be permitted to give his conclusions concerning the condition of a person examined, basing his conclusion in part upon the history of the case. It was said that the underlying purpose for the rule is to prevent the admission of self serving declarations of patients or of statements made by others not under oath. Cain v. Steely, supra. While not stated in express language, each of the cases bears overtones indicating that the physician giving the testimony had not examined the person in the course of rendering professional care and treatment but for the purpose of becoming qualified to testify as experts. Here, the physician whose testimony is challenged resided and was engaged in the practice of medicine at Tucson, Arizona. Prior to going to Arizona, the deceased received medical care and was in hospitals in Kansas. The physician at Tucson became the attending physician of the deceased soon after his arrival there; the physician continued in that capacity until the death of the deceased more than two years later; and he attended an autopsy performed upon the body of the deceased. In connection with his services as attending physician of the deceased, the physician received from sources in Kansas certain medical and hospital data in the nature of case history, and he familiarized himself with it. But his examination of the deceased and his familiarizing himself with the history of the case during the lifetime of the deceased were for the purpose of rendering effective professional care and treatment, not for the purpose of qualifying himself to become a witness. And the testimony given in these circumstances was not open to the motion to strike. Southern Kansas Railway Co. v. Michaels, 57 Kan. 474, 46 P. 938; Seymour v. Kelso, 136 Kan. 543, 16 P.2d 958; North American Accident Insurance Co. v. Burkett, Okl., 281 P.2d 434; Powers Storage Co. v. Industrial Commission, 340 Ill. 498, 173 N.E. 70; Taylor v. Atlantic Coast Line Railroad Co., 232 Ala. 378, 168 So. 181; Sundquist v. Madison Railways Co., 197 Wis. 83, 221 N.W. 392; Marshall v. Sellers, 188 Md. 508, 53 A.2d 5; Traders & General Insurance Co. v. Burns, Tex. Civ.App., 118 S.W.2d 391; Metropolitan Life Insurance Co. v. Osborne, 286 Ky.

301, 150 S.W.2d 479; III Wigmore on Evidence, Third Edition, § 688.

The sufficiency of the evidence to establish the fact that the disability and death of the deceased were attributable to his employment is challenged. The determinative issue of fact vigorously litigated at the trial was whether such disability and death were proximately due to lipoid pneumonia and fibrosis of the lungs or to generalized schleroderma, a systematic collagen disease affecting the connective tissue manifested in one or more organs of the body. It would not serve any useful purpose to detail the evidence at length. It is enough to say that much evidence was adduced bearing upon the controverted question of fact. The jury resolved the issue in favor of the plaintiff, and the evidence was sufficient to sustain the verdict and judgment.

The correctness of one instruction is attacked. Te substance of the instruction was that application of the Act, supra, is not limited to accidental injuries but extends to injuries in the nature of occupational diseases which are the proximate result of negligence on the part of a railroad employer. The ground of objection directed to the instruction was its failure to define the term "occupational diseases", as used; and its failure to limit occupational diseases to those usually and commonly understood by the medical profession and lay population as a matter of common knowledge to constitute occupational diseases. No requested instruction defining occupational diseases was tendered, and all of the instructions given are not in the record before us. But it does appear from the record that the court in the course of the instructions defined negligence; defined proximate cause; charged that while the defendant was under duty to use reasonable and ordinary care to provide a reasonably safe place for the deceased to carry on his duties, it was not an insurer of his safety; charged that the obligation to furnish the deceased a reasonably safe place in which to carry on his duties did not contemplate the elimination of every danger, but only the elimination of those foreseeable and unnecessary dangers which could be removed by reasonable care; and charged that while the defendant was under a duty to exercise ordinary care to supply machinery and appliances reasonably safe and suitable for the use of the deceased, it was not required to furnish the latest, best, and safest appliances, or to discard standard appliances upon the discovery of later improvements, provided those in use were reasonably safe and suitable. It is the general rule that a court should in its instructions define technical terms when their meaning must be understood by the jury in order to determine the issues submitted. But a court is not required to define words and phrases which are familiar to one of ordinary intelligence. Milwaukee Mechanics Insurance Co. v. Oliver, 5 Cir., 139 F.2d 405. In view of the trend of the trial, and the substance of the instructions as a whole which appear in the record, we entertain no doubt that the jury had a clear understanding with respect to the meaning of the term "occupational diseases" as used in the instruction, and that the failure to define such term did not prejudice the defendant.

The remaining contention is that a new trial should have been granted upon the ground of newly discovered evidence. A motion for new trial is addressed to the sound judicial discretion of the trial court, and the action taken thereon will not be disturbed on appeal except in a clear case of abuse of such discretion. Dyess v. W. W. Clyde & Co., 10 Cir., 132 F.2d 972; Missouri, Kansas & Texas Railway Co. v. Jackson, 10 Cir., 174 F.2d 297; United States v. Regents of New Mexico School of Mines, 10 Cir., 185 F.2d 389. There was no clear abuse of discretion in the denial of the motion in this case.

The judgment is

Affirmed.