No. 36,192

FAYNE GANTZ, as Administratrix of the Estate of D. E. Bondurant, Deceased, *Appellant,* v. MELBA BONDURANT, *Appellee.*

(155 P. 2d 450)

Opinion filed
January 27, 1945.

*Harold W. McCombs,* of Russell, argued the cause, and *Jerry E. Driscoll,* of Russell, and *Raymond D. McCombs,* of Ness City, were on the briefs for the appellant.

*Samuel E. Bartlett,* of Wichita, argued the cause, and *Robert C. Foulston, George Siefkin, George B. Powers, C. H. Morris, Grover Pierpont,* all of Wichita, and *Tom Smyth,* of Ness City, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action (1) to establish a resulting trust in 400 acres of land; (2) for possession thereof; (3) for damages for conversion of a grain elevator; (4) for possession of another grain elevator or damages in lieu thereof; and (5) for an accounting involving the operation and management of the 400 acres of land involved in the first cause of action and on other lands. The last cause of action was settled by stipulation of the parties. Judgment was for defendant on each of the other causes of action and plaintiff has appealed.

Pertinent facts will be related in the discussion of the respective causes of action. Did the trial court err in refusing to conclude a resulting trust was established?

This action by the administratrix of the estate of D. E. Bondurant, deceased, is against Melba Bondurant, the widow of D. E. Bondurant's only son, Chester Bondurant, who died intestate over two years before his father. The resulting trust upon which appellant relies to recover the land for the father's estate grows out of an alleged oral agreement between the father and son.

The instant action was originally commenced by the father on January 18, 1943. Upon his death the action was revived in the name of his heirs. When administration of the father's estate was commenced his daughter, Fayne Gantz, was appointed administratrix and as such was substituted as party plaintiff. The issues in the action had been joined prior to the father's death and the administratrix adopted the allegations of her father's pleadings.

The father prior to his death on August 28, 1943, had operated a grain elevator at Ness City for many years. He was also an extensive landowner and had been engaged in farming and cattle raising. His only son, Chester Bondurant, died intestate February 2, 1941, leaving as his sole heir his widow, Melba Bondurant, the defendant in the instant case. An intimate and most cordial relationship had

at all times existed between the father and son. They had farmed most, if not all, of their lands under a partnership or joint enterprise arrangement, the precise character of which is not now material. The father also died intestate and left as his heirs his widow, Ollie Bondurant, and two daughters, Rita B. Holloway and Fayne Gantz. The father had conveyed lands to each of his daughters.

The 400 acres of land now involved had stood of record in the son's name since 1924. The son's widow, defendant, had not procured an administration of her husband's estate. Neither the father nor anyone else had made application for the appointment of an administrator for the son's estate within one year after the son's death. No claim that the land now in controversy belonged to the father was ever made in the probate court.

On February 3, 1942, more than one year after the son's death, the defendant, pursuant to the provisions of G. S. 1943 Supp. 59-2250, petitioned the probate court of Ness county to determine the descent of the land in question together with other lands. The father appeared and requested a continuance of that hearing, which was granted. On the same day he filed a motion to dismiss so much of the proceeding as related to the determination of ownership and title to the real property on the ground the probate court was without jurisdiction to determine title to real estate. Pursuant to the order of continuance the hearing was held and the father appeared in person and by counsel. The probate court made all findings necessary to disclose the widow was qualified under the provisions of G. S. 1943 Supp. 59-2250 and 59-2251 to file a petition for and to obtain a decree of descent. That court also found Melba Bondurant, the son's widow, was the son's sole heir at law. The court decreed:

"It Is Therefore by the Court Decreed that the right, title and interest of the decedent in and to the above described real estate and all other real estate within the state of Kansas and owned by the decedent at the time of his death, subject to any lawful disposition thereof heretofore made, be and the same is hereby assigned to and vested in Melba Bondurant as the sole and only heir of the said decedent."

No steps were taken by the father or by anyone else in the probate court to set aside that decree and no appeal was taken therefrom.

Appellant claims the equitable title in the land was in the father. She contends a resulting trust was created by reason of the fact the father had paid the consideration for the purchase of the land in 1924 under an oral agreement with the son, without fraudulent in-

tent, that the conveyance of the land was to be taken in the name of the son and the son was to hold the land in trust for his father. Appellant insists there was evidence to support that contention and therefore the case constitutes an exception to G. S. 1935, 67-406, and is governed by the provisions of G. S. 1935, 67-408.

G. S. 1935, 67-401, provides:

"No trust concerning lands except such as may arise by implication of law shall be created, unless in writing signed by the party creating the same, or by his attorney thereto lawfully authorized in writing."

G. S. 1935, 67-406, reads:

"When a conveyance for a valuable consideration is made to one person and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections."

G. S. 1935, 67-407, pertains to the effect of such a conveyance on creditors and is not applicable.

The pertinent part of G. S. 1935, 67-408, provides:

"The provisions of the section next before the last shall not extend to cases . . . where it shall be made to appear that by agreement and without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof."

One of the difficulties with appellant's contention is that it is doubtful whether the father actually paid the consideration for the purchase of the land. There was also testimony from which the jury might have concluded if the father provided the consideration it was intended as a gift or advancement to the son. The evidence is also open to the interpretation that the father was later fully compensated for all moneys he had lent to his son. Another and insurmountable barrier to appellant's cause is that the jury, retained in an advisory capacity, made an express finding that there was no agreement the son was to hold the title in trust for the father. There was abundant testimony and numerous circumstances from which the jury properly could reach that conclusion. The trial court approved the jury's finding and on appellate review that finding is conclusive. The finding brings the case squarely under the provisions of G. S. 1935, 67-401 and 67-406, which preclude appellant's recovery even though the father paid the entire consideration for the conveyance to his son.

Appellant complains concerning the exclusion of certain testimony. We do not deem it necessary to narrate the testimony or to

treat the contention at length. The testimony was properly excluded on the ground it was not competent in view of the issues joined by the pleadings. Moreover, if the particular testimony were competent it could not change the result in view of the jury's finding that no trust agreement existed.

Appellee contends the probate court's decree of heirship constitutes a judicial estoppel to appellant's claim of title. The determination of that question is not essential to a decision in this case, and in view of the particular wording of that decree we prefer not to pass upon the question. Neither need we decide appellee's contention that laches bars appellant's recovery.

Appellant contends if it be held she cannot prevail upon the trust theory then the father's estate should be subrogated in the amount the father paid in 1924 to redeem the land from a mortgage foreclosure sale. The right of subrogation was not made an issue by the pleadings and was raised for the first time on the motion for a new trial. Moreover, the doctrine of subrogation could not have been invoked successfully under the facts if it had been pleaded. The payment of the redemption money by the father appears to have been voluntary. If, however, it was not voluntary and constituted a debt there was some evidence it had been paid. If it actually constituted an unpaid debt no claim therefor was presented against the son's estate in the probate court and the demand is barred by the nonclaim statute, G. S. 1943 Supp. 59-2239, See, also, *In re Estate of Dumback,* 154 Kan. 501, 119 P. 2d 476.

While we have treated appellant's first cause of action on its merits there are other reasons which prevent a reversal of the judgment. Appellant claims the father was the equitable owner of a portion of his deceased son's estate, 400 acres of land, and therefore defendant, the son's widow, could not inherit the land. Any claim or demand against a decedent's estate or a portion thereof must be filed in the probate court except where express provision is made in the probate code for filing it in the district court. (*Erwin v. Erwin,* 153 Kan. 703, 708, 113 P. 2d 349; *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438; *Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364; *Yeager v. Yeager,* 155 Kan. 734, 129 P. 2d 242; *Swisher v. Bouse,* 155 Kan. 797, 130 P. 2d 565; *Behee v. Beem,* 156 Kan. 115, 117, 131 P. 2d 675; *Egnatic v. Wollard,* 156 Kan. 843, 856, 137 P. 2d 188; *Burns v. Drake,* 157 Kan. 367, 371, 139 P. 2d 386; *In re Estate of Grindrod,* 158 Kan. 345, 148 P. 2d 278.)

In none of the above cases was the claim or demand against the estate for money. In each case it was specifically a claim or demand to all or a portion of the decedent's estate and was based upon the theory that claimant was entitled to be decreed the owner thereof.

The rule that a claim of ownership to property of a decedent's estate must be filed in the probate court has been applied in cases where decedent died intestate as well as where he died testate. (*Dixon v. Fluker; Burns v. Drake,* both supra.) In the Burns case plaintiff sought specific performance of an oral contract to convey land to her by "will or deed" in consideration of services performed and a decree declaring title to be vested in her and quieting her title as against the defendants. We quoted from provisions of the demand statute, G. S. 1943 Supp. 59-2239, and from our previous decisions interpreting it, and said:

"We cannot agree that the word 'demands' refers solely to claims to be paid in money. In view of the fundamental purposes sought to be accomplished by the new code we think the legislature intended the term 'demands' as here used to be all-inclusive—to include all demands against the estate, whether legal or equitable in character, except in particular cases where the statute may expressly provide otherwise. All property in the estate is drawn into administration. Upon final settlement the court must determine the heirs, devisees, legatees, and by decree make proper assignment. The determination of an issue such as that here involved is as much a prerequisite to distribution as any money demand. To hold otherwise would defeat one of the purposes of the code—the plain legislative intent to unify administration and expedite the closing of decedents' estates." (p. 371.)

In the same case we further said:

"If one who contests a will must now start in the probate court and appeal is barred after nine months, why should not one who claims a right, either legal or equitable, to estate property as against those claiming by inheritance be required to assert his claim within a nine-months period? We think that was the legislative intent and see no hardship in the requirement." (p. 371.)

If in the course of administration some question arises over which the probate court does not have jurisdiction that court is required to certify the question to the district court for determination. (G. S. 1943 Supp. 59-2402; *Erwin v. Erwin,* supra.)

It is true that in the instant case appellee took no steps to have her husband's (Chester's) estate administered. That fact, however, did not relieve the father or any other person having a claim upon the property of Chester's estate from having an administrator appointed within one year after Chester's death in order that he might assert

the same in the manner and within the time prescribed. (G. S. 1943 Supp. 59-2239; *In re Estate of Dumback*, 154 Kan. 501, 119 P. 2d 476.)

Appellant having failed to establish title to the land, of course, cannot prevail on her second cause of action for the possession thereof.

The third cause of action was not a claim against a decedent's estate. It was a law action to recover damages from appellee by reason of her alleged wrongful conversion of an old elevator at Laird after her husband's death. The evidence before us on this cause of action is very meager. The action was predicated upon the father's ownership of the elevator. The father had purchased the elevator for the sum of $2,000 in 1929 from the Farmer's Coöperative Grain and Supply Company. The evidence does not disclose a bill of sale was delivered. At the time the elevator was sold the vendor held a lease on land which was a part of, or near, the railroad right of way of the Atchison, Topeka and Santa Fe Railway Company. The elevator was located on that land. The lease was not assigned to the father, but to the son. The son used the elevator and at all times paid the taxes thereon. The burden of proving the father's ownership was, of course, on appellant. Appellant makes no complaint concerning the admission or exclusion of evidence. The jury resolved the issues in favor of appellee on instructions which are not before us. No objection appears to have been made to submitting the cause to the jury or to the instructions given. It is not now contended they were erroneous or inadequate. The court approved the verdict and we find no ground upon which to disturb the judgment.

The fourth cause of action was one for the possession of another grain elevator at Laird or for damages in lieu thereof. The petition, in substance, alleged: The father in 1931 had constructed or caused to be constructed this elevator at Laird at a cost of $11,825.76 and that he was the owner thereof; the father had orally informed his son, Chester, and his wife (defendant) that if they would pay the taxes on the elevator and keep it in repair they could operate it for their own use until such time as the father desired possession thereof; the parties agreed to that arrangement and the son and the defendant operated the elevator until the son's death in 1941; it was also agreed that the son and his wife could purchase the elevator by paying the father the cost thereof plus improvements the father

placed thereon; if they purchased the elevator he would deliver a bill of sale to them; they did not purchase it but the defendant since her husband's death has refused to surrender possession thereof after repeated demands therefor; the present value of the elevator is $8,000.

The pertinent portion of appellant's evidence discloses: The father originally negotiated with contractors Chalmers & Borton in April, 1931, to construct the elevator at Laird and another elevator at Ness City; later the contractors negotiated with the son concerning the elevator at Laird and with the father concerning the elevator at Ness City; the contract for the construction of the Laird elevator was not signed by the father but by the son; the contract for the elevator at Ness City was signed by the father; the father and son each operated his own elevator and as his own separate business; when the Laird elevator was completed in December, 1931, the contractors executed and delivered a bill of sale therefor to the son; the contractors had requested the son to obtain also his father's signature on the contract for the Laird elevator; the son refused to do so but informed them his father would help him with the payments on the contract and it appears his father did so; the evidence fails to clearly disclose the exact amounts which each of them paid on the Laird elevator; there were checks to the contractors executed by the son in 1931 in the sum of at least $6,500; in 1932 the father made a financial statement, listing assets, and the Laird elevator was not included therein; there was evidence which tended to show a settlement between the father and son in 1933 in which the father accepted $4,000 in full discharge of all debts of every kind and character which the son owed him.

The trial court sustained appellee's demurrer to appellant's evidence. Appellant's evidence did not establish the father's ownership of the elevator but tended to establish the son's ownership. There were numerous exchanges of checks between the father and son in connection with various business transactions. From the record before us it is impossible to state what the exact purpose of all the checks may have been. If the father had any claim or demand against his son or the defendant it was a claim on indebtedness. That claim as against the son, was required to be exhibited for allowance against the son's estate. The evidence did not establish the father's ownership of the elevator or appellant's right to

possession thereof and the demurrer to appellant's evidence was properly sustained.

The judgment on each cause of action must be affirmed. It is so ordered.

BURCH, J., not participating.