No. 37,044

In re Estate of William D. Pratt, Deceased (T. C. Babb, Executor, *Appellant*, v. Stanley G. Stewart, *Appellee*).

(190 P. 2d 872)

Opinion filed March 6, 1948.

*T. D. Hampson,* of Fredonia, argued the cause, and *Albert F. Hillix* and *John E. Park,* of Kansas City, Mo., were with him on the brief for the appellant.

*Louis R. Gates,* of Kansas City, Kan., argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HOCH, J.: The appellee, Stanley G. Stewart, filed his petition in probate court for allowance of demand against the estate of William D. Pratt, deceased, then in process of administration. T. C. Babb, executor of the estate, demurred to part of the petition. The demurrer was sustained, and an appeal taken to the district court. The district court overruled the demurrer and remanded the case to the probate court. From that order this appeal was taken by the executor.

Appellant's principal contentions are that facts alleged in the petition show a demand arising out of a partnership which existed for a period of more than twenty-seven years; that the probate court is without jurisdiction to entertain a demand arising out of a partnership or out of a "joint venture" as alleged in the petition, until there has been a final accounting and a balance found due out of the personal estate, and for the further reason that the claimant seeks determination of title to property; and that the petition does not initiate an action to secure a partnership accounting.

The petition may be briefly summarized. Petitioner asserted that he is a creditor of the Pratt estate in the amount of $86,000; that in May, 1918, he entered into a "joint venture" with Pratt, "in a project in the nature of contract operations or commissions from various business transactions in connection with the management and operation of a business of obtaining contracts for commissions, and of the purchase and sale of stock and securities of individuals and corporations throughout the country and the financing of business enterprises and similar transactions"; that Pratt undertook to furnish the funds necessary for the "joint venture" and to devote a substantial part of his time thereto, and the petitioner agreed to devote his entire working time to the management and operation of the "joint venture" and to engage in no outside work without Pratt's approval, or to make any investments requiring time and attention without Pratt's consent; that the "joint venture" applied to all of Pratt's net income "arising from contract operations or commissions paid him subsequent to January 1, 1918, and to certain contracts, negotiations on which were begun prior to January 1, 1918"; that the petitioner was to receive from such "joint venture" ten percent of Pratt's net income from such contract operations subsequent to January 1, 1918, and from certain contracts and negotiations begun

prior to January 1, 1918; that the petitioner and Pratt operated the "joint venture" on these terms until July 1, 1931; that the "joint venture" was modified by mutual agreement about June 1, 1931; that under this modification it was agreed that each of them from time to time would purchase stocks or securities in their respective names, either from their personal funds or from funds borrowed for such purpose for the use and benefit of the "joint venture," the purchaser of such stock or securities to be reimbursed for interest or commissions paid for the loans made for such purposes, to the end that neither party would purchase any stocks or securities without giving the other party the opportunity to refuse to participate therein; that various transactions were had in carrying on such "joint venture"; that subsequent to Pratt's death, the petitioner first ascertained that the books concerning the "joint venture," kept under Pratt's supervision and control, contained numerous false items of expense; that items of expense set forth in the office expense statements—with the exception of rent, secretarial service, legal fees and expenses—are either false or are fraudulent in that they represented expenditures foreign to the "joint venture"; that from January 1, 1932, up to the time of his death on October 9, 1945, Pratt charged items of expense to the "joint venture" in the total sum of $131,-669.27, and that of this amount the petitioner was charged $26,-333.43; that about November 1, 1944, petitioner requested a final accounting of the "joint venture" and with particular reference to specific items not necessary here to recount, and advised Pratt that he no longer desired to participate in the "joint venture" and that in consideration of his remaining in the "joint venture" Pratt promised to execute his last will and testament and therein to forgive all the expenses charged to the petitioner in the "joint venture" as they appeared in the office expense statements; that the petitioner fully performed under the agreement and continued to manage and operate the "joint venture" until Pratt's death, but that Pratt failed to carry out his promise, and that the petitioner is entitled to have forgiven all such expenses appearing in the office account as of November 1, 1944. The prayer was for allowance of demand in the sum of $86,000 and for an order directing the executor to forgive all expenses charged to the petitioner as hereinbefore referred to.

The executor's demurrer did not include the paragraphs of the petition relating to the request for a final accounting and discon-

tinuance of the "joint venture" and the alleged promise of Pratt concerning his last will.

The appellant first contends that the facts alleged disclose a partnership, not simply a "joint venture"; that a "joint venture" is an arrangement limited in scope and duration, being ordinarily an agreement to engage in some specific venture for mutual benefit; that in this case the long period of time over which the transactions were conducted, the number of ventures involved, and the unrelated character of each to the others, negatived the existence of a "joint venture," within the legal meaning of that term. The appellee, on the other hand, calls attention to the fact that the executor has not filed an inventory of any partnership property; that the claimant is not liquidating partnership affairs and does not have possession of partnership property; and contends further that the items included in the demand are either stated definitely as to amount, or the amounts are readily determinable by mathematical computation. It is true that the transactions alleged cover many years, and are rather involved in character. However, we are not called upon here to determine whether the transactions constituted merely a "joint venture"—the appellee being employed by Pratt, his services to be paid from profits accruing to Pratt—or whether the relationship was, strictly speaking, a partnership. In either event the petition was not demurrable.

G. S. 1947 Supp., 59-2239, provides:

"All demands, including demands of the state, against a decedent's estate, whether due or to become due, *whether absolute or contingent,* including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor, or indemnitor, and including the individual demands of executors and administrators, not exhibited as required by this act within nine months after the date of the first published notice to creditors as herein provided, shall be forever barred from payment." (Italics supplied.)

This section has been construed and applied in numerous cases since the adoption of the present probate code. All demands against an estate, whether absolute or contingent, whether based upon legal or equitable grounds, are barred unless filed in the probate court within the nine months provided in the statute. (See *Gantz v. Bondurant,* 159 Kan. 389, 155 P. 2d 450, and many cases cited, p. 393.) This requirement applies whether the demand be one exhibited by the claimant as a surviving partner or merely as an individual.

Syllabus 3 of *In re Estate of Bourke,* 159 Kan. 553, 156 P. 2d 501, reads as follows:

"When the record title to real and personal property stands in the name of a decedent on the date of his death and thereafter another person asserts an interest and ownership therein *based upon a partnership relation the claim so asserted by him is a 'demand'* against the estate of such decedent within the meaning and intent of that term as used in G. S. 1943 Supp., 59-2236 to 59-2241, incl., which must be exhibited in the manner and within the time required by their provisions." (Italics supplied.)

And in the opinion, holding the claim to be barred, it was said:

"He failed to exhibit such demand within the time provided for therein *either as a surviving partner or as an individual."* (p. 561.) (Italics supplied.)

Certainly appellee did set up a demand against the estate. It is true that if a partnership relationship be shown, any claim arising out of the partnership relationship would first have to be satisfied, if possible, out of the partnership assets, before resort could be had to the individual assets of the decedent. But that fact does not preclude the instant petition from constituting a demand. If separate liquidation of partnership affairs should prove to be necessary it might well be beyond the nine months before the claimant could establish the definite amount, if any, due from the estate. His only safe course was to file the demand.

G. S. 1947 Supp., 59-301(4) specifically grants to probate courts original jurisdiction of partnership estates, and sections 59-1001 to 59-1005, incl., provide the manner in which partnership estates are to be administered in the probate court. (See *In re Estate of Bourke,* supra.)

Section 59-301, in which are set forth the instances wherein probate courts shall have original jurisdiction, provides in paragraph (12):

"And they shall have and exercise such equitable powers as may be necessary and proper fully to hear and determine any matter properly before such courts."

We have had numerous occasions to call attention to this provision and in each instance have emphasized the fact that probate courts may now exercise, broadly, whatever equitable powers are necessary and proper "fully to hear and determine any matter properly before such courts." (See *In re Estate of Hoover,* 156 Kan. 31, 131 P. 2d 917, and cases cited, p. 40.)

It is clear that whether the petition alleged a demand growing out

of a "joint venture" or out of a partnership, the probate court had jurisdiction to entertain it.

Next, appellant contends that the probate court is without authority to adjudicate title to certain bonds and stocks held by the decedent's estate and which the appellee asserts are, in fact, owned by him. The contention is not good. It is not contended that title to the stocks and bonds in question is not held in the name of the decedent. Presumably they are listed in the inventory submitted by the executor. The appellee asserts ownership in those securities. It is well settled that the probate court has exclusive original jurisdiction to determine all questions pertaining to title or ownership of property when necessary to final settlement and distribution of a decedent's estate unless the probate code expressly provides otherwise. (*Houdashelt v. Sweet*, 163 Kan. 97, 180 P. 2d 604, and cases cited, page 101. See, also, *In re Estate of Bourke*, supra.)

Appellant contends further that whether jurisdiction, in this instance, be in the probate court or in the district court, the appellee had no demand which he could assert prior to determination of a fixed amount due after a partnership accounting. We do not agree. If a partnership relationship be shown, he may not be able to establish his demand but, as heretofore noted, that does not preclude his filing it, or make the petition demurrable. In fact, it was especially incumbent upon him to exhibit the demand in view of the fact that the executor filed no separate partnership inventory and listed in the name of the decedent the property which the claimant now seeks to reach.

Lastly, appellant contends that the instant petition does not initiate an action for an accounting. Again, the fact that it does not do so does not make the demand demurrable. The rights of the appellant are not jeopardized. If an accounting be necessary, he has a right to require that it be had. Indeed, it would then be the duty of the probate court to conduct or to direct an accounting in order that the estate might be fully administered.

The judgment is affirmed.