(570 P.2d 1380)
No. 48,463

THE SALVATION ARMY OF WICHITA, KANSAS, *Appellee,* v. The Estate of Agnes M. Pryor, Deceased, GLADYS DUBOIS CAPLINGER and FAYE DUBOIS DEVORSS, CO-EXECUTRICES, *Appellants.*

Opinion filed September 2, 1977.

*John P. Sheahon* and *Harold H. Chase,* of Salina, for the appellants.

*Kenneth F. Ehling* and *Robert E. Upp,* of Hutchinson, for the appellee.

Before SPENCER, P.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: This is an appeal by the co-executrices of the estate of Agnes M. Pryor, deceased, from a district court order allowing a claim of The Salvation Army of Wichita, Kansas, in the sum of $12,143.55 by imposing a constructive trust on the assets of the estate. The assets upon which the trust was imposed were acquired by Agnes M. Pryor during her lifetime by inheritance from the estate of her sister, Gussie McClure, in violation of a joint, mutual and contractual will that had been probated on the death of Gussie McClure's husband, John F. McClure.

John F. McClure and Gussie McClure were husband and wife. During their lifetime they entered into what all parties now concede was a joint, mutual and contractual will. John F. McClure died on March 9, 1957. His joint, mutual and contractual will dated January 6, 1953, was admitted to probate in the probate court of Sedgwick County, Kansas. Gussie McClure was appointed executrix and the estate was fully administered. The estate was probated and the executrix was discharged on April 22, 1958.

The will of John F. McClure and Gussie McClure read in pertinent part:

"ITEM FIRST   We direct that our just debts and funeral expenses be paid and that a suitable tombstone be placed at our graves either by the survivor of us or the Executrix of the survivor as hereinafter appointed.

"ITEM SECOND   We each give and bequeath to the other spouse respectively, John F. McClure and Gussie McClure, all of our personal property absolutely.

"ITEM THIRD   We each give and devise a life estate in all of our real property to the other spouse respectively, John F. McClure and Gussie McClure, together with all rents, issues and profits thereof. We also give the survivor of us the power to sell and convey such real property during his or her life time in the event that

such action may seem advisable and to use the proceeds thereof, if necessary, for the support, maintenance and comfort of such survivor.

"ITEM FOURTH   We hereby further give, devise and bequeath to the Executrix hereinafter appointed all of our Estate, real, personal and mixed that may remain at the death of the survivor, subject only to Item First herein. We hereby direct that said Executrix shall, as soon as possible, after our death sell and convert all real and personal property, that the survivor of us shall have at the time of his or her death, into cash and after paying our debts and funeral expenses, the expense of buying and erecting a monument at our graves, if the same has not already been done, and the payment of all costs and expenses of administration, divide the balance of the same in equal proportions to the following institutions, to-wit:

The Methodist Church,
Valley Center, Kansas.

The Christian Church,
Valley Center, Kansas.

The Baptist Church,
Valley Center, Kansas.

The Park Church,
Sunnydale, Kansas.

The Midwest Bible and Missionary Institution,
Salina, Kansas.

The National Broadcasting System
Long Beach, California. (Charles Fuller)

The Salvation Army,
Wichita, Kansas.

The said organizations shall have full discretion in how they shall use the funds they are given. We further will and ordain that if any of the above institutions are not in being when the survivor of us shall die, then the legacy to such institution shall lapse and the residuary estate shall be divided among the others set out."

The journal entry of final settlement made distribution as follows:

"IT IS, FURTHER, BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that the balance of the funds on hand, together with all other personal property, owned by the decedent at the time of his death, subject to any lawful disposition thereof heretofore made, is hereby assigned to Gussie McClure, and the same shall be distributed to her immediately.

"IT IS, FURTHER, BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that the following described real estate, to-wit:

The Northeast Quarter (NE/4) of Section Nineteen (19), Township Twenty-five (25) South, Range One (1) East, in Sedgwick County, Kansas,

together with all other real estate, and the rents, issues and profits thereof, owned by the decedent at the time of his death, subject to any lawful disposition thereof heretofore made, is hereby assigned to Gussie McClure, for life, with the power to sell and convey said real property during her lifetime in the event that such action may seem advisable and to use the proceeds thereof, if necessary, for her support, maintenance and comfort. If said real estate shall remain at the death of Gussie McClure then the same shall pass to the Executrix named in said Will, or her successors or substitutes, who shall sell and convert the same into cash and after paying all debts and funeral expenses, the expense of buying and erecting a monument at the graves of Gussie McClure and John F. McClure, if the same has not already been done, and the payment of all costs and expenses of administration, divide the balance of the same in equal proportions to the following institutions, to-wit:

The Methodist Church, Valley Center, Kansas; The Christian Church, Valley Center, Kansas; The Baptist Church, Valley Center, Kansas; The Park Church, Sunnydale, Kansas; The National Broadcasting System, Long Beach, California. (Charles Fuller); The Salvation Army, Wichita, Kansas; The Midwest Bible and Missionary Institution, Salina, Kansas,

and the said organizations shall have full discretion in how they shall use the funds they are given; provided, if any of the above institutions are not in being when Gussie McClure dies then the legacy to such institution shall lapse and the balance shall be divided among the others set out."

Sometime after John F. McClure's death, Gussie McClure moved into the home of her sister, Agnes M. Pryor, in *Reno* County, Kansas. A new will was drawn and executed on March 17, 1968, whereby Gussie McClure bequeathed $5,000 to her brother and the remainder to Agnes M. Pryor. Gussie McClure was eighty-three years old when she executed the will on March 17, 1968. Gussie McClure's brother preceded her in death, leaving Agnes M. Pryor as the sole beneficiary of Gussie McClure's last will. The real estate was disposed of during the lifetime of Gussie McClure.

Gussie McClure died on April 30, 1972. Her will dated March 17, 1968, was admitted to probate in the probate court of *Reno* County, Kansas. No actual notice was given to any of the charitable institutions named in the joint, mutual and contractual will of John F. McClure and Gussie McClure dated January 6, 1953. The required publication notices were published in Reno County. Copies of the publication notices were not mailed to any of the interested charities. The estate of Gussie McClure was fully administered, a decree of final settlement was approved by the court, and the executor discharged on July 11, 1973. All of the assets of Gussie McClure's estate were paid to Agnes M. Pryor.

Agnes M. Pryor died testate on February 7, 1975, eighteen

months after the estate of Gussie McClure was closed. The will of Agnes M. Pryor was admitted to probate in the probate court of Reno County, Kansas, on March 12, 1975.

In July of 1975, The Salvation Army learned of Gussie McClure's death and timely filed a claim in the estate of Agnes M. Pryor, deceased. The Salvation Army was the only charity among those named in the joint and contractual will of John F. McClure and Gussie McClure which filed a claim in the estate of Agnes M. Pryor.

The Salvation Army's claim requested relief as follows:

"WHEREFORE, Petitioner prays that the alleged Will of Gussie McClure, deceased, dated March 17, 1968, be held in contravention of the joint, reciprocal, mutual and contractual Will of John F. McClure and Gussie McClure, deceased, and the property distributed to Agnes M. Pryor from the Gussie McClure Estate be traced, accounted for and placed in trust in this Court and distributed to this Petitioner and the other beneficiaries under the Will of John F. McClure and Gussie McClure, deceased, and that this Petitioner have judgment for its costs herein."

The claim was transferred to the district court of Reno County where a pretrial conference was held. The parties stipulated in writing that the evidence in the case would be the entire files in the estates of John F. McClure, Gussie McClure and Agnes M. Pryor, as well as a conservatorship proceeding of Agnes M. Pryor. In addition, it was stipulated that the seven charities were still in existence and the amount of claimant's demand was one-seventh of $85,004.85, or $12,143.55. The sum of $85,004.85 was the full amount Agnes M. Pryor receipted for as sole beneficiary of the estate of Gussie McClure, deceased. The district court found that the contractual provision of the joint and mutual will should be enforced and The Salvation Army was a beneficiary in the estate of John F. McClure. The district court then imposed a trust in the full amount of the claim of $12,143.55. The estate of Agnes M. Pryor appealed to this court from the decree of the district court.

Appellant first contends that the legacy contained in the joint, mutual and contractual will of John F. McClure and Gussie McClure was adeemed prior to the death of Gussie McClure when Gussie sold the real estate described in the journal entry of final settlement in John McClure's estate.

Ademption has been defined as "the term used to describe the act by which a specific legacy has become inoperative by the withdrawal or disappearance of the subject matter from the tes-

tator's estate in his lifetime." (*In re Estate of Chevalier,* 167 Kan. 67, 204 P.2d 748.)

A legacy is specific when the bequest is of some definite and specific thing capable of being designated and identified as compared to a general legacy which does not direct the delivery of a particular thing but may be paid or satisfied out of the general assets. (*In re Estate of West,* 203 Kan. 404, 454 P.2d 462.)

We conclude that the testators, having made provisions for the executor to convert all of their estate, real, personal and mixed, to cash and then distribute the cash to seven charities in equal proportion, made general bequests and the doctrine of ademption does not apply.

Our attention is next turned to the question of whether The Salvation Army's claim, insofar as it is based on a contractual theory, is barred by the nonclaim statute for failure to file a claim in the estate of Gussie McClure.

Our law is well defined in Kansas that a claim may be filed against the estate of a testator who breaches a joint, mutual and contractual will. (*In re Estate of Chronister,* 203 Kan. 366, 454 P.2d 438; *Reznik v. McKee, Trustee,* 216 Kan. 659, 534 P.2d 243.) A single will may be both a will contractual in nature and a contract testamentary in nature. As a will it is revocable, but as a contract it is enforceable; and although a contractual will revoked by execution of a second will cannot be probated, it can be enforced as a contract against the estate of the testator breaching it. (*Reznik,* supra.)

The parties conceded on oral argument that the will of John F. McClure and Gussie McClure was a joint, mutual and contractual will. Gussie McClure breached the joint, mutual and contractual will when she revoked the same on March 17, 1968, in her will that was subsequently probated. The question thus boils down to whether or not the trial court erred in imposing a trust on personal property Gussie McClure contracted to will to The Salvation Army when The Salvation Army failed to file a claim in the estate of Gussie McClure.

It is important to note that appellee did not allege or attempt to prove either actual or constructive fraud. No allegation was made or proof offered that the heirs of Gussie McClure, or anyone acting in an official capacity in the estate of Gussie McClure, had knowledge of the prior joint, mutual and contractual will of John

F. McClure and Gussie McClure so that actual notice to appellee and the other charities might be required as compared to constructive notice required by the probate code.

Constructive notice is insufficient to satisfy due process requirements when the name and address of a party are known or are easily ascertainable. (*Walker v. Hutchinson,* 352 U.S. 112, 1 L.Ed.2d 178, 77 S.Ct. 200 [1956]; *Dodson v. City of Ulysses,* 219 Kan. 418, 549 P.2d 430.) But if the names and addresses of possible heirs are still unknown after the exercise of reasonable diligence, constructive notice when authorized by statute is as binding as actual notice regardless of whether or not actual notice is achieved. (*Unified School District v. Turk,* 219 Kan. 655, 549 P.2d 882; *In re Estate of Barnes,* 212 Kan. 502, 512 P.2d 387.) Constructive notice is authorized under K.S.A. 59-2209.

Neither the trial court nor this court may speculate that any of the parties acted in bad faith in failing to give actual notice to the seven charities. The probate proceedings in the estate of John McClure in an adjoining county would not have imparted notice to the executor and heirs of Gussie McClure of the prior joint, mutual and contractual will. No one suggests and we do not find that a petitioner for probate, an executor, or the heirs of a decedent had a duty to search the public records of a neighboring county to ascertain possible claimants in the absence of information that would put a reasonable person on notice of the possibility of other heirs or claimants. The duty to protect their interests rightly falls on those who would make a claim against the estate of a decedent. It follows that those who have a claim must be vigilant in ascertaining whether a potential debtor is dead or alive.

In *Allbert v. Allbert,* 148 Kan. 527, 83 P.2d 795, a case decided before the 1939 probate code was adopted, a trust was imposed where real estate was held in the name of the deceased's mother for over nineteen years. The mother had accounted to the deceased, who lived in Ohio, for the rents and profits from the land. On the mother's death, she willed the property to another son. The estate of the mother was opened, the property was assigned to the second son, and the estate was closed in 1934. The court held that the mother had held the property in trust and the son could not inherit by will from his mother any greater estate than his mother held and all she held was the title in trust for the deceased son.

The rule of *Allbert,* supra, was superseded by statutory changes when the probate code was adopted and was specifically disapproved in *Simmons v. Gill,* 161 Kan. 123, 166 P.2d 574. In *Simmons,* the plaintiffs were the sole heirs of Etta Coe. Etta Coe was married to Lee Coe. Etta and Lee Coe contracted to purchase real estate and over one-half the purchase price was paid by Etta Coe. Etta Coe died. Lee Coe paid the remainder of the contract price and a deed was delivered to Lee Coe conveying the real estate to him. Lee Coe remarried and upon his death devised the real estate to Florence Gill. Lee Coe's estate was duly opened and closed, and no claim was filed by Etta Coe's heirs. The plaintiffs' cause of action was held to be barred by plaintiffs' failure to assert their claim in the probate court within the time prescribed in the nonclaim statute.

In *Egnatic v. Wollard,* 156 Kan. 843, 856-7, 137 P.2d 188, the Supreme Court considered the question of jurisdiction of probate courts and in passing commented on equitable and/or legal claims arising out of a written contract, stating:

"It needs no argument to sustain the view that when a person dies his individual capacity to respond in damages for his torts, to pay his debts, to carry out his contracts, and to distribute his estate ceases. Thereafter his financial obligations must be met by his estate. One who deems himself entitled to a part or all of such an estate, whether the right contended for is founded in tort, or upon oral or written contract, or under the will of the decedent, or under the statute of intestate succession, must recover, if at all, from the decedent's estate. Under our probate code the probate court is made the forum for the transaction of this business, and it is given original jurisdiction to probate the will, if decedent left one, to appoint an executor or an administrator of his estate, to require an inventory and appraisement of the assets of the estate, to hear the petition of anyone who claims all or any part of the estate, after due notice to all parties interested so each may have his day in court, and ultimately to settle the accounts of the executor or administrator and to disburse the estate to those legally entitled thereto. . . .

". . . Summarizing, this court except in matters involving the adjudication of secured demands and a few others where adequate and proper relief is not expressly provided for, is committed to the doctrine that the new Kansas probate code grants exclusive original jurisdiction to the probate court over all matters incident and ancillary to the control, management, administration, settlement and distribution of decedents' estates, including the exhibition and establishment of claims and irrespective of whether those claims be denominated equitable or legal." (Underscoring supplied.)

In *Burns v. Drake,* 157 Kan. 367, 139 P.2d 386, Mabel Burns

filed a petition in the estate of her father alleging an oral contract to convey certain real estate to her by "will or deed" in consideration of her caring for him. The claim was filed over nine months after the first publication of notice of the administrator's appointment. The Supreme Court concluded the petition was a demand against the estate and was barred, the demand not having been exhibited within the nine-month period specified in the nonclaim statute.

The case of *Gantz v. Bondurant,* 159 Kan. 389, 155 P.2d 450, also involves the question of title to real estate. It is a resulting trust case, but has some precedential value. Gantz was administratrix of the estate of D. E. Bondurant. D. E. Bondurant was the father-in-law of the defendant, Melba Bondurant. Gantz maintained that D. E. Bondurant furnished money for land held in the name of Melba's deceased husband. Melba's husband preceded D. E. Bondurant in death and his estate had been opened and closed prior to D. E. Bondurant's death. Gantz sought to impose a resulting trust based on an oral agreement between the father and son. The Supreme Court, speaking through Justice Wedell, held the contention of Gantz should have been filed as a claim or demand against the deceased son's estate and, no claim having been timely filed, was barred by the nonclaim statute.

In the case *In re Estate of Welch,* 167 Kan. 97, 105, 204 P.2d 714, the court defined "all demands" as used in the nonclaim statute as applying "only to claims against the estate of a decedent which, if allowed, will reduce the corpus of his estate or the amount of property which would otherwise be subject to division or distribution among the heirs of an intestate decedent or the legatees and devisees of a testate decedent as the case may be." (See, also, *McCormick v. Maddy,* 186 Kan. 154, 348 P.2d 1007.)

The case of *In re Estate of Goodburn,* 210 Kan. 740, 745-6, 504 P.2d 612, made a distinction between "a contest of a will" and "a demand against an estate." The *Goodburn* case involved an attempt to enforce an oral contract to convey both real and personal property and to enforce a trust. The court very succinctly stated:

"In the present case, the petitioner is seeking to have the contractual obligation to bequeath and devise one-half of the property, enforced. He is in no way challenging the validity of the will, or the right of the beneficiaries to take under the will, or its operation as to the remaining property. He is merely asserting a claim or demand pursuant to the equitable power of the probate court (K.S.A.

59-301[12]) to construe the alleged oral agreement of the decedent to bind the property of her estate so far as to fasten a trust on it in favor of the petitioner, and to enforce such trust against the devisees and personal representative of the decedent. (*Anderson v. Anderson,* 75 Kan. 117, 123, 88 Pac. 743; *Meador v. Manlove,* 97 Kan. 706, 156 Pac. 731; *Braden v. Neal,* 132 Kan. 387, 392, 295 Pac. 678.)

"It would serve no useful purpose to extend this opinion further. The court is constrained to hold that where a party seeks to enforce a contractual obligation to devise or bequeath a portion of a decedent's estate, the proceeding constitutes a demand against the estate and not a will contest, and an appeal may be taken by any person aggrieved by the decision of the probate court, to the district court within thirty days after the making of such order, judgment, or decree. (See 57 Am. Jur., Wills, §§ 180, 718, pp. 158, 488.) Any statement or decision in *Foss* or *Yeager,* or any statement in any other opinion of this court to the contrary is disapproved." (Underscoring supplied.)

Based on the foregoing cases, we have no hesitancy in concluding the district court erred in imposing a trust on funds in the hands of the co-executrices of the estate of Agnes M. Pryor for funds Gussie McClure contracted to will to The Salvation Army. The appellee's claim in that regard was against the estate of Gussie McClure. In the absence of clear and convincing proof of a breach of fiduciary duty, actual or constructive fraud, or some other form of unconscionable conduct, appellee's claim based on a contractual theory is barred by the nonclaim statute, K.S.A. 59-2239. The Salvation Army's inability to recover on a contractual theory does not necessarily preclude recovery on any other theory.

The will of John F. McClure clearly established a life estate in Gussie McClure in the Northeast Quarter of Section Nineteen (19), Township Twenty-five (25) South, Range One (1) East, in Sedgwick County, Kansas. This particular piece of real estate was appraised at $30,000 in John F. McClure's estate. No evidence was offered regarding its sale price, and no effort was made to trace the funds received from its sale. No evidence was offered as to what part of the corpus, if any, was necessarily consumed by Gussie McClure for her support, maintenance and comfort.

The life tenant was granted the power to sell and convey the real property during her lifetime in the event that she deemed such action advisable and to use the proceeds therefrom, if necessary, for her support, maintenance and comfort. John F. McClure's will then provided for the executrix to sell the real estate if it remained in the survivor's possession at the survivor's

death and to distribute the proceeds to the seven charities, provided they were in being when the survivor died.

A life estate can be created in real property subject to sale by the life tenant (with the life tenant having the discretionary power to use the corpus of the sale price if necessary for support, maintenance and comfort), or subject to sale by an executrix after the termination of the life estate, with the proceeds to be distributed thereafter to named charitable institutions which as remaindermen have an interest that vested at the death of the testator. The remaindermen did not have the right of the use and enjoyment of the personal property until the death of Gussie McClure.

The probate court assigned a life estate to Gussie McClure pursuant to the will. Both Gussie McClure and The Salvation Army were given actual notice of the final settlement hearing. Due notice having been given, a final settlement of an estate made by the probate court pursuant to the probate code is a final order binding upon all persons interested in the estate, and the order of final settlement, if not appealed from, becomes final and conclusive against collateral attack. (*In re Estate of Seeger,* 208 Kan. 585, 493 P.2d 281.)

Gussie McClure exercised the authority granted her in the will to sell the real estate. She was then required to keep the proceeds as a trust fund for the benefit of the remaindermen subject to her right to receive the income generated by the corpus during her lifetime. She was further authorized to invade the corpus if necessary for her support, maintenance and comfort. The life tenant occupies a fiduciary relationship to the remainderman and is frequently referred to as a quasi trustee. (*Windscheffel v. Wright,* 187 Kan. 678, 360 P.2d 178.)

Upon the death of Gussie McClure the corpus remaining from the sale of the real estate Gussie McClure held for life should not have been included in her estate. Having gone a full circle, we must once again face the question of whether or not The Salvation Army's claim timely filed in Agnes M. Pryor's estate is barred by the nonclaim statute for failure to file a claim in the estate of Gussie McClure insofar as The Salvation Army seeks to recover funds inherited from the estate of John F. McClure that were inventoried and distributed in the estate of Gussie McClure, *i.e.,* the corpus remaining from the sale of the real estate.

The Kansas Supreme Court has had occasion to consider the

necessity of filing a claim in a decedent's estate to recover personal property when the claimant contends the personal property is legally the claimant's and not the decedent's.

In the case of *In re Estate of Paronto,* 172 Kan. 7, 9-10, 238 P.2d 464, the claimant did not file a claim within the statutory period in an effort to recover a diamond ring that was his and not the decedent's. The claimant filed an answer to the petition for final settlement contending he had loaned the ring to the decedent. The trial court denied the claim because it was barred under the nonclaim statute. On appeal, the claimant took the position that the ring never became part of the assets of the estate and because the ring belonged to him he was not seeking to recover anything belonging to the estate. The Supreme Court, in affirming the trial court, stated:

".   .   . The fact that the ring was found on decedent's finger amongst her personal effects at the time of her death was enough to make it incumbent upon anyone who claimed the ring against the claim of her personal representative to make the claim within the time allowed under the nonclaim statute. The assertion of any right against the assets of a decedent constitutes a claim against the estate and must be filed within the provisions under the nonclaim statute." (Citations omitted.)

In *Oswald v. Weigel,* 215 Kan. 928, 934, 529 P.2d 117, the trial court specifically found that the subject matter of a bill of sale became the property of the defendants at the time of the execution of the contract, and that as to the personal property listed on the bill of sale and in defendants' possession there was no necessity for making a claim for the property in decedent's estate on the theory there was no effort to take anything out of an estate. The court, however, in stating that a determination of who has possession at the time of death of the person whose estate is being probated is critical in ascertaining whether or not a claim must be filed within the statutory period, comments:

".   .   . As we have already held, such possession is one of the determining factors as to whether the nonclaim statute (59-2239) is applicable. If defendants were in such possession they must prevail; if not, they must lose one-half of this portion of the property covered by their bill of sale by reason of their failure to have the claim timely allowed in probate court."

The Supreme Court has repeatedly held that unless a claim or demand is asserted in a decedent's estate, it is barred by the nonclaim statute even though the claimants' theory is that they are actually the owners of the property. (See, in addition to the

cases heretofore cited, *In re Estate of Pratt,* 164 Kan. 512, 190 P.2d 872; *Houdashelt v. Sweet,* 163 Kan. 97, 180 P.2d 604; *Malcolm v. Larson,* 158 Kan. 423, 148 P.2d 291; *In re Estate of Grindrod,* 158 Kan. 345, 148 P.2d 278; *Egnatic,* supra; *Behee v. Beem,* 156 Kan. 115, 117, 131 P.2d 675; *Swisher v. Bouse,* 155 Kan. 797, 130 P.2d 565; *Yeager v. Yeager,* 155 Kan. 734, 129 P.2d 242.)

Kansas appears to be one of the few states, if not the only one, that bars the claim of one who claims legal or equitable title to items of personal property for failure to comply with the nonclaim statutes. (See case cited in 42 A.L.R.2d 413, § 6, p. 443.)

Argument is made that an exception should be made in this case since real estate was converted to personal property, the theory being that real estate should be treated differently than personalty. We are unable to agree that a distinction on that basis is valid. Under the facts of this case, money, not real estate, was devised. In 1873 the Supreme Court of the United States held that:

"The real estate having been directed by the will to be converted into money, it is to be regarded for all the purposes of this case as if it were money at the time of the death of the testator. That it was not to be sold until after the termination of two successive life estates does not affect the application of the principle. Equity regards substance and not form, and considers that as done which is required to be done. The sale being directed absolutely, the time is immaterial." (*Cropley v. Cooper,* 86 U.S. [19 Wall.] 167, 174, 22 L.Ed. 109 [1874].)

The Supreme Court has placed emphasis on the question whether or not the action attempts to reduce the corpus of the estate which would be subject to distribution among the legatees and devisees of a testate decedent in determining whether a written claim must be filed. Had a claim been filed in the estate of Gussie McClure, it clearly would have been an effort to remove assets from her estate. Gussie McClure during her lifetime obviously was of the opinion the property was hers to do with as she desired, as evidenced by her new will. From the evidence before us, the executor of Gussie McClure's estate had a duty to gather all assets in Gussie McClure's name and distribute them according to the will admitted to probate in Reno County. No proof was offered that the executor acted in any manner other than with the utmost good faith.

The legislature has given some indication that all claims or demands of any nature, legal or equitable, be presented in the

decedent's estate, and the Supreme Court has so held. (*Shively v. Burr,* 157 Kan. 336, 342, 139 P.2d 401; *Estate of Grindrod,* supra.)

In addition, both the law and equity favor the vigilant. Appellee failed to protect its interest when it failed to request a bond of the life tenant under the provisions of K.S.A. 59-1506. One can understand the reluctance of a charitable institution to require a benefactor to post a bond. When appellee chose not to request a bond, it still had an opportunity to protect itself by remaining in contact with the life tenant and filing a claim in her estate or to take any other steps available to it on the date of Gussie McClure's death.

Despite the fact we have a great deal of difficulty drawing a distinction between this case and the rationale of *Gantz,* supra; *In re Estate of Paronto,* supra; *Oswald,* supra; and the other cases cited herein, we are of the opinion they are not controlling in this case.

The Kansas Supreme Court adopted Restatement (Second), Trusts § 289, in *Kline v. Orebaugh,* 214 Kan. 207, 519 P.2d 691. The section reads:

"If the trustee in breach of trust transfers trust property and no value is given for the transfer, the transferee does not hold the property free of the trust, although he had no notice of the trust." (Syl. 6.)

The comments following § 289, p. 56, read in part:

"*b. Transfers inter vivos or by will.* The rule stated in this Section is applicable where the trustee makes a gift of trust property inter vivos or by will."

The Supreme Court, having adopted § 289 of Restatement (Second), Trusts, intended to also adopt the interpretations included in the comments in the absence of an express rejection. Two theories exist that we conclude have validity in allowing recovery against the estate of Agnes M. Pryor for any funds remaining from the sale of the Northeast Quarter (NE/4) of Section Nineteen (19), Township Twenty-five (25) South, Range One (1) East, in Sedgwick County, Kansas. The first is that the transferee merely takes the place of the transferor and in effect becomes the quasi trustee with the same fiduciary duty to the remainderman as the life tenant had. (76 Am. Jur. 2d, Trusts § 257.) The second is that the estate of Agnes M. Pryor would be unjustly enriched at the expense of the remaindermen as a result of the violation of the trustee's duty to the remaindermen. (Scott on Trusts, Second, § 289.)

We conclude that when the remainderman is able to prove trust funds are in existence and to follow and identify the trust funds, a constructive trust will be imposed on the funds. The remainderman's claim will be allowed if the life tenant breached a fiduciary duty by making a gift of the property by will even though the transferee had no notice of the trust duties of the transferor if the remainderman is not guilty of laches or barred by some statute of limitations other than the nonclaim statute.

We have examined appellant's contention that the doctrine of laches should bar The Salvation Army's claim and find the contention to be without merit.

The case is reversed and remanded to the trial court for further proceedings in accordance with this opinion.